**Barbara J. GARVIN, James Edward Garvin, Jr., Appellees,**

v.

**ALUMAX OF SOUTH CAROLINA, INC., a Delaware Corporation, Appellant,**

and

**Alesa Alusuisse Engineering, A.G., a Swiss Corporation, Reggiane, an Italian Corporation and Specimas, an Italian Corporation, Defendants.**

No. 84–1156.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1984.

Reargued Feb. 5, 1985.

Decided April 1, 1986.

Rehearing and Rehearing En Banc Denied May 14, 1986.

Henry B. Smythe, Jr. (David B. McCormack, Buist, Moore, Smythe & McGee, Charleston, S.C., on brief), and M. Dawes Cooke, Jr. (Barnwell, Whaley, Patterson & Helms, Charleston, S.C., on brief), for appellant.

George E. Campsen, Jr. (Marvin D. Infinger, Sinkler, Gibbs & Simons, Charleston, S.C., on brief), for appellees.

Before RUSSELL and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

Garvin was seriously injured while doing maintenance work on a ship loader located upon a pier. He was collecting compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 *et seq.*, when he filed this action against the firms that allegedly designed and manufactured the machine and some of its component parts and against the contractor-owner of the machine who had contracted with Garvin's immediate employer for its operation and maintenance. He alleged liability under the South Carolina Strict Liability statute, S.C.Code § 15–73–10 *et seq.*, and in negligence. Alumax, the contractor and owner of the unloader, was not a seller of the machine and the claim against it was grounded solely upon common law negligence.

Alumax filed a motion to dismiss on the ground that it was the statutory employer of the plaintiff and immune from this common law tort action against it under South Carolina's Workmen's Compensation Act, § 42–1–540. The district court denied the motion, reasoning that since the LHWCA affirmatively extends immunity only to the subcontractor, which had procured compensation insurance, the two statutes were repugnant, the federal Act took precedence under the supremacy clause, and Alumax was not immune from suit.

While the case against all the other defendants is pending, the district court certified its decision for an immediate appeal under the provisions of 28 U.S.C.A. § 1292(b). This court granted leave to appeal.

Finding no repugnancy in the two statutes in the context of this state law tort claim, we reverse and hold that Alumax is entitled to the immunity conferred upon it by South Carolina law.

I.

Alumax is an importer of alumina ore, which it converts into aluminum. It is a joint lessee of a terminal near Charleston, South Carolina for the unloading of ocean-going vessels and is the owner of the alumina ore unloading machine installed on the pier.

The terminal is operated by Lemm Corporation-Operations, Garvin's immediate employer, and it is responsible for the operation and maintenance of the unloading machine. Lemm procured workmen's compensation insurance, as it was contractually required to do, but the premium costs were treated as costs of operation that Alumax paid.

While performing routine maintenance work on the unloading machine, Garvin came in contact with electrically energized members. He was severely shocked and suffered the loss of both arms.

II.

Preliminarily, we address the question of our subject matter jurisdiction, though we conclude that we have jurisdiction to adjudicate the merits of the question presented by the parties.

Garvin and his wife filed their original complaints in the United States District Court for the District of South Carolina. They alleged that federal jurisdiction was present because of diversity of citizenship and the presence of the requisite amount in controversy. That allegation, though correct as to all of the other defendants, turned out to be incorrect as to Alumax. Alumax, however, did not immediately raise the jurisdictional question. Instead, it moved for a dismissal on the ground that it was Garvin's statutory employer and that neither Garvin nor his wife, claiming through him,[1] had any cause of action against it for his work-related injury.

In order to avoid dismissal of the complaint on the merits, Garvin filed a second amended complaint. In that complaint, he alleged federal question jurisdiction. Specifically, it was alleged that Garvin was receiving compensation under the LHWCA; that under that statute, as amended, Alumax, as the remote employer, had no immunity; that the federal and state statutes were repugnant; and that the provisions of the federal statute should prevail under the Supremacy Clause. Conceding that there was no right of action under state law, it was alleged that a determination that the federal statute had the meaning and the effect for which the plaintiff contended was "essential" to his cause of action.

As indicated earlier, the district judge was persuaded, holding that the two statutes, indeed, were repugnant and that the federal statute prevailed rendering inapplicable South Carolina's protection of statutory employers.

It may well be that we are all agreed that the LHWCA does not purport to create any rights of action in consequence of any land based injury not caused by a vessel. At least by indirection, however, it is the contention of the plaintiff, and the holding of the district judge, that it does. The South Carolina statute, § 42–1–540, provides that acceptance of the compensation scheme "shall exclude all other rights

and remedies of such employee" and those claiming through him. If that provision is rendered inapplicable by the LHWCA, as amended in 1984 specifically to permit injured employees of subcontractors to sue the general contractor unless the subcontractor had failed to procure compensation insurance and the general contractor had been compelled to do so, then the LHWCA has created a cause of action when none otherwise would exist. Its creation may be somewhat indirect when, under the South Carolina statutes, Garvin has neither right nor remedy, but plaintiff's claim of a right to sue is clearly derived from the federal statute.

The South Carolina statute speaks in terms of the exclusion of all other rights and remedies. If a covered employee of a complying employer is injured on the job, a right of compensation accrues, but no common law action for damages accrues as against his immediate or remote employer. When one views the state scheme in terms of the plaintiff's search for a right to sue, the invocation of the federal statute takes on a decidedly "offensive" cast. The plaintiff has an immediate need for the federal provision because, without it, he may not proceed.

For convenience, however, the statutory deprivation of an injured employee of his right of action against his employer is frequently described as the employer's immunity. If one speaks in terms of immunity, the effect of the federal statute might seem a bit more indirect. It might be argued that South Carolina has always preserved the right of action by an injured employee against a statutory employer and provided an appropriate remedy, but, at the same time, has clothed the statutory employer with immunity. In that posture, the plaintiff's contention is given a more defensive coloration. If it is thus contended that an injured employee may state a perfectly good claim against his statutory employer for negligent infliction of physical injury and the statutory employer's reliance upon

---

1. The wife's claim is derivative, and her pleadings and contentions track those of her husband. What we say of his claim applies also to hers.

the statute is labeled a claim of immunity, then the plaintiff's reference to the LHWCA may seem a federal response to an anticipated state law defense. This, however, is only a circuitous statement of the plaintiff's claim that the LHWCA gives him a right to proceed which otherwise he would not have.

Federal question jurisdiction can be invoked only when the federal question appears on the face of the plaintiff's complaint. Usually, the plaintiff's right must be, in part at least, a federal right, and federal question jurisdiction may not be invoked by an allegation of an anticipated federal defense or a federal response to an anticipated state law defense. *See Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). *Mottley* is at one end of the spectrum. The plaintiffs stated a perfectly good breach of contract claim governed entirely by state law. They went further, however, and alleged that the Railroad sought to justify or excuse its non-performance by reference to a recently enacted federal statute governing the issuance of passes to railroad passengers. They went still further and alleged that the federal statute was unconstitutional as applied if it were held to require that the Railroad refuse further performance of its contractual obligation.

There, the federal statute was clearly separable from the plaintiffs' claim. The plaintiffs' cause of action was sufficiently stated without reference to the federal statute. That reference was only in anticipation of the Railroad's defense.[2]

The plaintiff concedes that he has no right of action under South Carolina law; he claims that he does have a right of action under the LHWCA and alleges that a construction and application of that statute in accordance with his contentions is essential to his cause of action. Whether one accepts the plaintiff at his word, however, and looks upon the federal statute as an essential ingredient of the plaintiff's claimed cause of action, or whether one looks upon the federal statute, as construed by the plaintiff, as stripping away the state created absolute immunity of the defendant, leaving it open to the plaintiff's attack, should make no difference. A determination whether a federal question is appropriately alleged in the plaintiff's complaint should not depend upon subtle choices of emphasis. The situation should be viewed realistically. The defendant is in its citadel with all of the protection of the South Carolina statute. The plaintiff may successfully assault it only from a foundation of some federally derived right, for he has no right of action under state law. He alleges that federal right, and we should accept the allegation as appropriate to his claim.

At the time of *Mottley*, the prevailing view was that, for jurisdictional purposes, a cause of action could not be said to arise under the laws of the United States unless the right of action was a creature of the laws of the United States. *See American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916). Federal jurisdiction does not exist, it was said, unless federal law "create[s] at least a part of the cause of action by its own force." *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 215, 41 S.Ct. 243, 250, 65 L.Ed. 577 (1921) (Mr. Justice Holmes, dissenting).

That view, however, was very substantially relaxed by the Supreme Court in the *Smith* case. That was a suit by a shareholder to prevent the directors of the corporation from investing corporate funds in bonds issued by a federally chartered land bank. The action was brought under a

---

2. The aftermath of *Mottley* is interesting. The case proceeded through the courts of Kentucky in which the Mottleys prevailed, but the Supreme Court then took the case to consider the federal questions it had refused to consider two years earlier. It then held that the federal statute required the Railroad to decline to renew its free passes and that the statute was constitutional as applied despite the fact that it deprived the Mottleys of part of the consideration for which, many years before, they had released their tort claims for damages for physical injury. *See Louisville & Nashville Railroad Co. v. Mottley*, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911).

Missouri law which limited the bank's investment of funds to "valid" securities. The plaintiff alleged that the federal land bank's bonds were invalid because the authorizing act of Congress was unconstitutional. Despite the procedural remoteness of the federal question, the Supreme Court held that federal question jurisdiction existed "because the controversy concerns the constitutional validity of an act of Congress which is directly drawn into question." *Id.* at 201, 41 S.Ct. at 245. Not surprisingly, Mr. Justice Holmes dissented. Under his strict view there could be no jurisdiction because Missouri alone had created the cause of action. State law provided the right and the remedy to confine the directors to lawful investments; federal law had no operative force of its own in the case, and the state's adoption of it for the purpose of determining whether the bonds were valid or invalid did not make the cause of action one arising under federal law. *Id.* at 215, 41 S.Ct. at 250.

It is true that Smith's cause of action was strictly the creature of state law, but the Supreme Court majority took the practical view and recognized that the only substantial legal question in the case was the validity of the bonds, and that was a federal question. At issue was the validity of an act of Congress, and pragmatic considerations strongly suggest that it was the kind of case that belonged in the federal courts.

The *Smith* case ushered in a new era. By 1964, Judge Friendly could say with some assurance that "[e]ven though the claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law." *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir.1964). Except when the need is only collateral or peripheral or relevant only to a separable defensive claim, federal question jurisdiction should be found to exist if the complaint discloses that the result will turn in substantial part upon the resolution of the federal question. *See Gully v. First National Bank*, 299 U.S. 109, 118, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936).[3]

This court has adopted that approach. *Christopher v. Cavallo*, 662 F.2d 1082, 1083 (4th Cir.1981). Other cases seem consistently to take the practical, pragmatic approach of *Eliscu* and *Christopher*.[4]

The plaintiff's complaint alleges a federal question. Resolution of that question in a manner favorable to him, he says, is essential to his cause of action. Indeed, in the present posture of the case, it is the only legal question presented. If that question is resolved unfavorably to him, he loses; if resolved favorably to him, there may be factual disputes leading to findings about negligence and contributory negli-

---

**3.** The Supreme Court's decision in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), does not militate against our conclusion. There, the state of California sought a state declaratory judgment of the validity of its regulations, but alleged that the defendant claimed that enforcement and application of the regulations was precluded by federal preemption. The defendant undertook to remove the case to a United States district court. There, the preemption claim was clearly and exclusively defensive. Here, the plaintiff asserts federal preemption and alleges that his right of action is dependent upon it. The Supreme Court in *Franchise Tax Board* said there is federal jurisdiction to "hear ... those cases in which a well-pleaded complaint establishes ... that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 27–28, 103 S.Ct. at 2855–56. This is such a case.

See also *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), where the plaintiff's claim was that the state laws regulating it were preempted. There, federal jurisdiction was upheld. *Id.* at 96 n. 14, 103 S.Ct. at 2899 n. 14.

**4.** See, e.g., *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1381 (10th Cir.1978); *Sweeney v. Abramovitz*, 449 F.Supp. 213, 214 (D.Conn. 1978). See also *Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323, 328 (2d Cir.1982) (action for a declaratory judgment turns on construction of federal energy law); *Chengfan Hsu v. Philippine Air Lines, Inc.*, 98 F.Supp. 805, 806 (N.D.Cal.1951) (state law negligence action "hinges" on construction of federal immigration law).

gence, but, as between the plaintiff and Alumax, the record does not disclose any other substantial, lurking legal question.

Since the plaintiff's complaint presents a substantial federal question which it is necessary to determine, we conclude that federal question jurisdiction is present. That there is jurisdiction to adjudicate, however, does not suggest that the plaintiff must necessarily prevail on that question. A federal court does not lose jurisdiction to adjudicate because resolution of the federal question ultimately goes against the plaintiff. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). In determining our jurisdiction, it is enough to observe that the district judge adopted the plaintiff's contentions, and this court cannot say that the contentions are insubstantial or frivolous.

### III.

There is a long history of congressional deference to the workmen's compensation acts of the states with respect to maritime employees other than masters and members of the crews of vessels. When, in 1917, the Supreme Court held in *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, that New York's workmen's compensation act could not be constitutionally applied to the employer of a longshoreman injured while engaged on shipboard in the unloading of the ship, the Congress twice attempted to avoid the *Jensen* bar and to authorize the extension of state workmen's compensation acts to maritime injuries of longshoremen and other harbor workers. Those efforts were held unavailing as in violation of the federal Constitution. *Knickerbocker Ice Co. v. Stewart,* 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920), *Washington v. W.C. Dawson & Co.,* 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924). Finally, the Congress, responding to a Supreme Court suggestion, enacted the LHWCA providing federal compensation coverage for such maritime workers, but the Act was to apply only if the relevant state's workmen's compensation act might not be validly applied. Thus, the Congress sought to draw the line between federal and state authority at the outer limits of the reach of the state's constitutional power to enforce and apply its workmen's compensation act.

The bright line that the Congress sought to draw between federal and state authority proved to be fuzzy. Injuries were suffered under circumstances in which no one could confidently predict in advance on which side of the constitutional boundary they fell. The practical problems led the Supreme Court to carve out a "twilight zone." Within that zone, the Supreme Court held there was concurrent jurisdiction and the injured worker might safely proceed under either the LHWCA or the state's workmen's compensation act at his election. *Davis v. Department of Labor,* 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942).

In *Calbeck v. Travelers Insurance Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), the Supreme Court held that the LHWCA was applicable in the "maritime but local" zone, even though there was little doubt that the state's workmen's compensation act could be applied validly. Thus, under the decisions of the Supreme Court, there came to be recognized zones in which both the federal statute and the relevant state statute were applicable.

The Congress substantially extended the zone overlap when it adopted the 1972 amendments to the LHWCA. The immediate purpose of the Congress was to increase the level of compensation payments under the federal statute, but it was also concerned with the disparity between the levels of the enhanced compensation under the federal statute and the compensation available under the statutes of some of the maritime states. Longshoremen engaged in unloading or loading a vessel passed to and from ship and pier and it was thought to be inequitable to have marked differences in the level of available compensation depending upon whether the injury was suffered on shipboard or on the pier. Consequently it extended the coverage of the LHWCA to include injuries to longshore-

men and other harbor workers suffered on piers adjoining navigable waters of the United States and other adjoining installations customarily used in loading, unloading, repairing or building vessels. *See* 1972 U.S.Code, Cong. & Adm.News pg. 4698, *et seq.*

The shoreward extension of the LHWCA in 1972 was not intended to set up an exclusive federal regime. It was an extension of previously recognized zones of overlapping federal and state authority. That was the holding of the Supreme Court in *Sun Ship Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). There the injured employees were clearly covered by the LHWCA, as amended in 1972, but Pennsylvania had increased the level of its workmen's compensation benefits to the point that they exceeded those available under the LHWCA. The employees claimed benefits under the state statute, and the Supreme Court held they were entitled to the state benefits because of the concurrent applicability of the federal and state statutes.

At the time of his injury, Garvin was working on the pier. No vessel was alongside, and it is not alleged that the fault of any vessel had contributed in any way to the condition of the unloading machine or to Garvin's injury. Since the pier was adjacent to navigable waters of the United States, he was within the coverage of the LHWCA as extended in 1972, but he was also clearly within the coverage of the South Carolina Workmen's Compensation Act because piers have always been recognized as extensions of land within the authority of the state and not within the authority of the LHWCA until its extension in 1972. As demonstrated by *Sun Ship,* he was free to proceed under the state statute if that route appeared advantageous to him. He chose, of course, to claim the higher benefits available under the federal statute, and the question is whether that choice limits the defenses available to a contractor in the position of Alumax when faced with a tort action founded entirely upon South Carolina law.

## IV.

■ Against this background of congressional concern to preserve and protect application by the states of their own workmen's compensation schemes and the purpose of the LHWCA's 1972 landward extension to "supplement," not to "supplant," state compensation acts, *Sun Ship, supra,* we approach the particular problem of this case.

On June 26, 1984 the decision of the Supreme Court in *Washington Metropolitan Transit Authority v. Johnson,* 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), was announced. There it appears that the WMTA, prompted by practical and financial considerations, had procured workmen's compensation insurance for the employees of all of its many subcontractors. Faced with tort actions by some of those employees in the District of Columbia, WMTA claimed immunity under the LHWCA, and the Supreme Court held that a general contractor in the position of WMTA, and Alumax, was entitled to that tort claim immunity. As so interpreted, the LHWCA and South Carolina's Workmen's Compensation Act were completely congruent.

There was swift congressional reaction. By P.L. 98–426, signed on September 28, 1984, 33 U.S.C.A. § 905 was amended by adding a sentence

> "For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employee only if the subcontractor fails to secure the payment of compensation required by § 904 ....."

The Congress was of the view that LHWCA immunity should extend to a contractor only if he secured the payment of compensation for the employees of subcontractors by force of the statutory requirement of § 904. It was stipulated that the amendment should apply to pending cases. Hence, it is now perfectly clear that the LHWCA extends no immunity to Alumax. There is nothing in that amendment or its legislative history, however, to indicate a

congressional intention to restrict the application of state created immunity of contractors in situations in which the state statute traditionally had been applied.

It was necessary, of course, for the Congress in the LHWCA to deal in some fashion with employer immunity. That statute has exclusive application in the District of Columbia and to most injuries suffered on the navigable waters of the United States. In those areas, the Congress was free to determine for itself under what circumstances a general contractor would be immune from tort actions by employees of a subcontractor, but nothing done in the Congress suggests that it intended to modify immunities provided general contractors by state workmen's compensation laws, when those laws are applicable.

Except with respect to claims against vessels addressed in 33 U.S.C.A. § 905(b), the LHWCA does not address the substantive rights of claimants against third parties. There are housekeeping provisions in 33 U.S.C.A. § 933. The right to maintain a third party action will not be waived by the acceptance of benefits, and there are provisions for the management of any such third party action as between the injured person and his employer and for the distribution of any proceeds derived in the third party action between the injured employee and his employer or subrogated insurance carrier. The federal statute seeks to protect and preserve whatever rights an injured claimant may have against third parties and to provide the terms upon which an employer or its insurance carrier may be a participant in, and beneficiary of, the prosecution of such claims. The federal statute lays down some procedural rules, but it does not create any cause of action against a third party, except with respect to claims against vessels, or to define circumstances affecting the right of the insured claimant to prevail in any action that may be brought against a third party.

As initially enacted, when the application of the LHWCA stopped at the water's edge, the third party claim would usually be one in admiralty. When application of the federal statute was moved inland to supplement state workmen's compensation statutes without displacing them, a third party claim under state law by a recipient of benefits under the LHWCA was not converted into a maritime claim. Its scope, including available defenses, is governed by state law. Thus in *Holland v. Sea-Land Service*, 655 F.2d 556 (4th Cir.1981), *cert. denied* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982), we held that the defendant, in an action brought by a recipient of benefits under the LHWCA for damages on account of injury for which he was receiving compensation, could defend on the basis of the state's contributory negligence rule.

A similar result was reached in *Millspaugh v. Port of Portland*, 65 Or.App. 389, 671 P.2d 743 (1983), in which it was held that Oregon's rule of municipal immunity is applicable to such a claim.

The Supreme Court itself left no doubt about the matter in *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). The third party action, when founded on state law, is a creature of state law and is to be governed entirely by it. Indeed, in *Ferri v. Ackerman*, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), the Supreme Court stated with respect to such a third party claim by an LHWCA compensation recipient:

> When state law creates a cause of action, the state is free to define the defenses to the claim, including the defense of immunity, unless the state rule is in conflict with federal law.

The South Carolina rule of immunity of a contractor in the position of Alumax is different from that under the LHWCA, but not in conflict with it, for Congress has not purported to prescribe the immunity rules to be applied by states in actions brought upon state law claims. The federal immunity rule is to be applied when the third party claim is a federal claim; when the third party claim is a state law claim, the immunity rules of that state are to be applied. The federal and state statutes are readily harmonized, and each may function

in its own sphere without interference with the other.

We are admonished not to seek out conflicts between federal and state laws "where none clearly exists" or to strike down state laws under the Supremacy Clause when application of the state law will result in no frustration of federal law. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); *Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc.,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963); *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Gary Aircraft Corp. v. General Dynamics Corp.,* 681 F.2d 365 (5th Cir.1982).

Congress has diligently attempted to preserve state law governance of state law third party claims by recipients of LHWCA compensation. Since there is no conflict between differing rules of immunity and application of South Carolina's rule will not frustrate the effectiveness of any federal law, Alumax, the contractor, is immune from this state tort claim.

### V.

The judgment of the district court is reversed and the case remanded with instruction to enter judgment for Alumax. The case may then proceed against the other defendants.

REVERSED AND REMANDED.

MURNAGHAN, Circuit Judge, dissenting:

I conclude that the proper disposition of the present case is to dismiss for lack of federal jurisdiction, rather than to enter judgment for Alumax. I am persuaded not only that we lack jurisdiction over the matter, but also that it would be preferable to allow the parties to seek an interpretation of the South Carolina worker's compensa-

tion statute in the South Carolina courts. I therefore respectfully dissent.

### I.

Alumax, Inc., operates a port facility in South Carolina. Under the terms of a contract between Alumax and Lemm Corporation, Lemm employees handle the unloading of ships and perform maintenance work on the unloading equipment. Lemm arranges for insurance policies to cover its workers' compensation obligations, but Alumax reimburses the cost of the policies as part of the contract price for Lemm's services.

James Garvin, a Lemm employee, was injured while performing maintenance work on a ship unloader on a pier in the port facility operated by Alumax. As the result of an electrical shock, Garvin lost both arms. He was eligible to receive compensation benefits under either the federal Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901, *et seq.,* or the South Carolina workers' compensation statute, S.C. Code Ann. Title 42. He elected to receive benefits under the LHWCA.

The LHWCA and the South Carolina act differ in at least one important respect. The LHWCA's compensation scheme is limited to immediate employers, even where the immediate employer is acting as a subcontractor. Only the immediate employer is obliged to provide compensation benefits, and only the immediate employer receives immunity from tort suits by injured employees. The general contractor has no obligation to secure benefits, and if it voluntarily does so, or if it pays the cost of compensation insurance secured by the subcontractor, it nevertheless generally receives no immunity from tort suits. The only exception to the rule, not applicable to the facts of the present case, occurs when the subcontractor fails to fulfill its obligation to secure a source of compensation benefits.[5] In that event alone, the obli-

---

5. The general contractor may not obtain tort immunity for itself simply by agreeing with its subcontractors that it will undertake to secure a source of benefits so that they need not do so. The general contractor may obtain immunity by securing compensation only *after* the subcon-

gation and the concomitant immunity shift to the general contractor. 33 U.S.C. §§ 904(a), 905(a), as amended by P.L. 98–426, 98 Stat. 1639 (1984).[6]

The South Carolina statute, on the other hand, extends the terms of its workers' compensation scheme to general contractors such as Alumax who are not immediate employers. The general contractor is liable to pay workers' compensation benefits to employees of subcontractors. S.C. Code Ann. § 42–1–400 (1976). In exchange, the general contractor receives immunity from tort actions brought by such employees. S.C.Code Ann. § 42–1–540 (1976).

After electing to receive benefits under the LHWCA, Garvin sought to sue Alumax under South Carolina tort law. Alumax is in the position of a general contractor, and Garvin's employer, Lemm, is in the position of a subcontractor. Because Lemm has not failed to secure the payment of compensation, it is indisputably clear that the LHWCA provides no immunity from suit for Alumax. However, Alumax claims immunity under the South Carolina workers' compensation statute.

## II

Federal jurisdiction to decide cases exists only within the scope of one of the federal jurisdictional statutes. Because the present case involves the Longshoremen's and Harbor Worker's Compensation Act, a federal statute, it might be thought that jurisdiction exists under 28 U.S.C. § 1331, which provides for jurisdiction in the federal courts over "civil actions arising under the Constitution, laws or treaties of the United States." This grant of jurisdiction is commonly referred to as "federal question" jurisdiction.[7]

However, not every case which implicates a federal statute in some way can be said to "arise under" federal law. An important prerequisite for the existence of federal question jurisdiction is known, somewhat misleadingly, as "the well-pleaded complaint rule." The gist of the rule is very simple. The federal issue that gives rise to jurisdiction must be part of the

---

tractor actually fails to do so. *See* H.R.Rep. No. 98–1027 (Conference Report), 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 2771, 2774.

**6.** Section 904(a) provides:

Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title. In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation. A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor.

Section 905(a) provides:

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death
. . .

**7.** Federal question jurisdiction is the only type of jurisdiction that is even arguably applicable here. Because Garvin and Alumax are both citizens of South Carolina (Garvin having alleged diversity but having abided by the district judge's determination that plaintiff and defendant, under 28 U.S.C. § 1332(c), shared a common state of citizenship), there can be no jurisdiction based on diversity. Nor does the present case fall within the admiralty jurisdiction of the federal courts. The Supreme Court has made clear that admiralty jurisdiction extends only to injuries occurring upon navigable waters and land-based injuries caused by vessels. It does not reach land-based injuries stemming from other causes, even where those injuries occur during the course of traditional maritime activity. *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 209–12, 92 S.Ct. 418, 423–25, 30 L.Ed.2d 383 (1971). This circuit has held that the geographical extent of admiralty jurisdiction was not altered by the 1972 amendments to the LHWCA, even though those amendments extended the federal compensation remedy to land-based maritime injuries. *Holland v. Sea-Land Service, Inc.,* 655 F.2d 556 (4th Cir.1981). Because Garvin's injury occurred on land and was not caused by a vessel, his claim is outside the scope of admiralty.

plaintiff's cause of action.[8] If the federal issue is raised by the defendant as part of an affirmative defense, or by the plaintiff in anticipation of an affirmative defense or in order to defeat such a defense, there is no federal jurisdiction. The Supreme Court has reaffirmed the rule on many occasions. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–12, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1973); *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152–54, 29 S.Ct. 42, 43–44, 53 L.Ed. 126 (1908).[9] It follows that if federal jurisdiction is to exist in the instant case, the federal question which gives rise to jurisdiction must be part of Garvin's cause of action against Alumax, and not a response to Alumax's defense.

As the case is now presented to this court, the well-pleaded complaint rule is not satisfied. Garvin's claim is brought pursuant to South Carolina tort law. Count One sounds in "Strict Liability in Tort," Count Two in "Negligence." [10] Alumax's affirmative defense is that it has immunity by virtue of the South Carolina workmen's compensation statute. Garvin responds that the immunity provision in the South Carolina statute is invalid because it conflicts with federal law. Thus, the federal issue does not enter into the case until we come to Garvin's response to Alumax's defense. The federal issue is not part of Garvin's cause of action, which arises solely under state law. As a result, there is no federal jurisdiction.

The majority argues that the LHWCA is part of Garvin's cause of action because Garvin's ability to proceed on his state-law negligence claim depends on the preemptive force of the federal statute. Because Garvin's negligence claim has been destroyed by the state workers' compensation statute unless that statute is preempted by the LHWCA,[11] the majority concludes that

8. The name of the rule—"the well-pleaded complaint rule"—derives from the idea that a federal issue that is part of the plaintiff's cause of action ought to appear on the face of a well-pleaded complaint.

9. In *Louisville & Nashville R. Co. v. Mottley*, the Supreme Court confronted what is often viewed as a paradigm situation for the application of the well-pleaded complaint rule. In that case, the plaintiffs had entered into a contract with the Louisville & Nashville Railroad Company, whereby the plaintiffs agreed to release their tort claim for injuries against the Company in exchange for the Company's commitment to provide them with passes for free railroad transportation for the remainder of their lives. The Company complied with this contract until 1907, when it refused to renew the passes. The plaintiffs sued for breach of contract under Kentucky law. The railroad argued that its refusal to comply with the contract was mandated by a 1906 federal statute forbidding the giving of free railroad transportation. The plaintiffs responded that the 1906 statute was unconstitutional on the ground that it deprived them of property without due process of law. Thus, two federal issues were raised: whether the 1906 Act of Congress prohibited compliance with the contract, and whether, if it did, the Act was unconstitutional. Nevertheless, the Su-

preme Court held that there was no federal jurisdiction. The first federal issue was part of the defendant's affirmative defense; the second federal issue was the plaintiffs' response to that defense. Neither of the federal issues were part of the plaintiffs' cause of action, which arose solely under state law.

10. Jurisdiction, as pleaded in the second amended complaint, was based on allegations of diversity as well as of the existence of a federal question, the district court's finding of want of diversity only coming as part of the order denying the motion of Alumax to dismiss.

11. The majority makes an unwarranted assumption here. Whether Garvin's negligence claim is in fact defeated by the state workers' compensation statute is an open question requiring an interpretation of state law. It is understandable why the assumption was made. Garvin alleged: "upon information and belief, under the provisions of the S.C. Workman Compensation Act and court interpretation thereof, the Plaintiff is a 'statutory employee' of the Defendant ALUMAX, and, as such, said defendant is immune to the within action under the laws of the State of S.C." Employment of the phrase "information and belief" indicates, though, that the allegation

the LHWCA is a component of his cause of action.[12] The argument is unpersuasive because it is inconsistent with a number of Supreme Court precedents. Each of those cases revealed a pattern similar to the one presented here: (1) a state-law cause of action; (2) a response, either of state or federal law, that bars or nullifies the plaintiff's claim; (3) a third level of federal law said to defeat the defendant's response. In none of those cases has the Supreme Court held that federal jurisdiction exists. Instead, the Court has held that, to serve as a basis for federal jurisdiction, the federal issue must appear as part of the plaintiff's initial cause of action. If that initial cause of action arises under state law, jurisdiction is not conferred on the district court by the fact that a federal law "saves" the state-law cause of action from a fatal obstacle.[13]

12. A first reading of the majority's jurisdictional discussion yields the impression that the majority is persuaded that Garvin's action is brought directly under the terms of the LHWCA, rather than under South Carolina tort law. The opinion states that Garvin "concedes that he has no right of action under South Carolina law," at 912, 913, that "plaintiff's claim of a right to sue is clearly derived from the federal statute," at 912, and that "the LHWCA gives him a right to proceed," at 913. Both parties agree, however, that Garvin's claim is for strict liability or negligence under South Carolina tort law. Garvin's original complaint, amended complaint, and second amended complaint all allege liability due to negligence. Indeed, the LHWCA is mentioned for the first time in Garvin's second amended complaint, which came after Alumax notified Garvin of its intention to move for dismissal on the ground of lack of jurisdiction.

A closer reading of the majority opinion indicates that, in its view, Garvin's cause of action does not arise directly under the LHWCA, but rather "derives" from the LHWCA in the sense that the LHWCA "saves" the state-law negligence claim from defeat due to the state workers' compensation statute.

13. An early case that falls into this pattern is *Louisville & Nashville RR Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), discussed *supra* at n. 9. It could be argued that, in *Mottley,* the plaintiffs' state-law contract claim was destroyed or nullified by the enactment of the 1906 federal statute, so that the plaintiffs, in a sense, no longer had a claim under state law. However, the Constitution invalidated the 1906 statute, thereby restoring the plaintiffs' state-law claim. Under the majority's reasoning, then, the Supreme Court should have held that the plaintiffs' claim arose under the Constitution, because the Constitution gave them a right to proceed which otherwise they would not have had. Yet the Supreme Court held that there was no federal jurisdiction to decide the case in *Mottley,* because the plaintiff's initial cause of action did not present a federal issue.

In *Gully v. First National Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), the same pattern is repeated. There, the state of Mississippi sued in state court, under state tax laws, to collect taxes owed by a national bank. The bank sought to remove the action to federal court, arguing that the state's claim would have been nullified by the constitutional prohibition on state taxation of federal entities, had it not been for a federal statute expressly permitting state taxation of national banks. Here, too, it could have been argued that the state-law claim was destroyed, but was then restored by a provision of federal law. Under the majority's reasoning, then, the claim should have been held to arise under the federal statute permitting state taxation of national banks. Nevertheless, the Supreme Court held that federal jurisdiction did not exist because the claim arose under state law.

The majority's reasoning would also have dictated a different result in *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1973). There, Texaco brought an action under state law of restitution for the value of helium commingled with natural gas which it had sold to Phillips for the price of the natural gas alone. Phillips set up the defense of payment under fixed rates set by the Federal Power Commission. Texaco responded that the Helium Act Amendments of 1960 precluded the application of FPC rates for natural gas to the sale of commingled natural gas and helium. Texaco's restitution claim was destroyed by Phillips' payment defense; if Phillips had paid its debt, Texaco had no restitution claim under state law. Texaco's claim was revived, however, by the Helium Act Amendments. Under the majority's reasoning, Texaco's claim should

could hardly be taken as a concession. Moreover, the question of statutory status is one of law, not of fact, and as such is not binding on Garvin in the absence of evidence that he intentionally misled the district court. *Tenneco Chemicals, Inc. v. William T. Burnett & Co.,* 691 F.2d 658, 664–65 (4th Cir.1982). "A judicial admission is normally treated as absolutely binding, but such admissions go to matters of fact which, otherwise, would require evidentiary proof ... The doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case." *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 24 (4th Cir.1963).

The majority also concludes that, because the "arising under" requirement of 28 U.S.C. § 1331 was "very substantially relaxed" by the Supreme Court in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), and subsequent circuit court decisions such as *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965), and *Christopher v. Cavallo*, 662 F.2d 1082 (4th Cir.1981), federal jurisdiction should be found to exist whenever the outcome of the case will turn in substantial part on the interpretation of federal law, regardless of whether the federal issue is part of the plaintiff's cause of action or instead related to a defense. In effect, the majority concludes that the well-pleaded complaint rule has been abandoned in favor of a more liberal approach to federal jurisdiction. That position is, I submit, incorrect, and I respectfully suggest that the authorities relied on by the majority do not support it. There was no question, in those cases, that the federal issue was part of the plaintiff's case and not raised to overcome an anticipated defense. Rather, the question was whether the federal issue, although properly part of the plaintiff's cause of action, was nevertheless too remote or tangential to serve as the basis for jurisdiction.[14] The

have been held to arise under the Helium Act Amendments. The Supreme Court, however, found that the claim arose under state restitution law and that, therefore, federal jurisdiction was lacking.

The rule is not undermined by the Supreme Court's decision in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). There, an airline brought a declaratory judgment action against the New York State Commissioner of Human Rights, seeking a declaration that certain state laws were preempted by ERISA. We, of course, are presented in the case before us with a customary type of lawsuit where the possibility of realignment so that a defendant can artificially recast himself in the guise of a plaintiff, present in a declaratory judgment action, simply does not exist. The question whether federal jurisdiction exists in a declaratory judgment action must be determined by reference to the hypothetical lawsuit that would have been brought if the declaratory judgment remedy did not exist. If, in such a hypothetical action, the federal issue would arise only as a defense or a response to a defense to a state claim, federal jurisdiction is lacking. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 16, 103 S.Ct. 2841, 2850, 77 L.Ed.2d 420 (1983); *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). The hypothetical alternative action that was considered in *Shaw* was an action by the airline to enjoin the enforcement of the state laws alleged to be preempted. 463 U.S. at 96, 103 S.Ct. at 2899, n. 14. A federal cause of action to seek injunctive relief against threatened state action that would be violative of the federal Constitution or other federal law has been recognized since *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Moreover, reasons that do not apply in other contexts militate in favor of exercising jurisdiction over challenges to state action where the state itself or its

officials are the defendants. As would be the case in *Shaw*, without the option of injunctive or declaratory relief in the federal courts, a plaintiff wishing to challenge state regulation would be obliged to disobey state law in order to provoke legal action by the state, possibly in the form of criminal prosecution, so that the challenge could be presented as a defense justifying the noncompliance. The Supreme Court has concluded that it is unreasonable to require a party to subject himself to such risks in order to challenge the validity of state action under the Supremacy Clause. *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Epperson v. Arkansas*, 393 U.S. 97, 100, 89 S.Ct. 266, 268, 21 L.Ed.2d 228 (1968); *Terrace v. Thompson*, 263 U.S. 197, 215–16, 44 S.Ct. 15, 17–18, 68 L.Ed. 255 (1923); *Ex Parte Young*, 209 U.S. 123, 145–47, 28 S.Ct. 441, 447–48, 52 L.Ed. 714 (1908). Those concerns are not present in a case such as the one now before us, instituted in the more customary way and involving only a dispute between private parties.

**14.** In both *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921) and *Christopher v. Cavallo*, 662 F.2d 1082 (4th Cir.1982), the federal issue was part of the plaintiff's cause of action because its resolution determined the *merits* of the plaintiff's state-law claim. In *Smith v. Kansas City Title & Trust Co.*, a shareholder brought suit to prevent the directors of the corporation from investing corporate funds in bonds issued by a federally chartered land bank. The action was brought under the charter of the corporation and Missouri corporation law, under which the directors of the Title & Trust Co. were empowered to invest in government bonds only if they were issued pursuant to a valid law. The shareholder contended that the investment would violate the directors' fiduciary duties, because the federal statute authorizing the issuance of the federal

line of cases relied on by the majority stands for the proposition that federal jurisdiction exists over cases raising such secondary or remote federal questions if resolution of the dispute requires an interpretation of federal law. Nevertheless, it remains true that the federal question must be part of the plaintiff's cause of action. The majority's argument therefore simply misses the mark.

land bank bonds was unconstitutional. The Supreme Court held that federal jurisdiction existed to resolve the dispute. In that case, it was clear that the federal issue was part of the plaintiff's cause of action, and not part of a defense or a response to or anticipation of a defense. In order to make out his claim that the directors' proposed investment would violate their duty under Missouri law to invest only in valid government bonds, the plaintiff was obligated to show that the bonds were invalid; to show that the bonds were invalid, he was obliged to show that their authorizing statute was unconstitutional. Thus, the federal issue, though "remote," was clearly part of the plaintiff's case.

A closely analogous situation arose in the Fourth Circuit's decision in *Christopher v. Cavallo*, 662 F.2d 1082 (4th Cir.1982). There, a theatrical producer sued the author of a play under their contract for breach of her warranty that her play did not infringe any copyrights belonging to third parties. The producer argued that the play did in fact infringe a particular copyright. To make out his state-law claim of breach of contract, the producer was obliged to show that the play's author had violated the federal copyright laws. The federal issue was secondary, but it was clearly part of the plaintiff's cause of action, not part of a defense or a response to a defense, and the Fourth Circuit properly held that there was federal jurisdiction.

Thus, neither *Smith* nor *Christopher* purports to abandon the requirement that the federal issue must be part of the plaintiff's cause of action, and not a response, regular or anticipatory, to a defense, in order to support federal jurisdiction. They simply stand for the proposition that federal jurisdiction exists where the merits of a state-law cause of action turn on a disputed question of federal law. *Smith* and *Christopher* would be apposite to the present case if Garvin had to make out a point of federal law in order to prove that Alumax had been negligent or was strictly liable under state law in tort. That is not the situation here, though. The federal question raised here is

Federal jurisdiction, especially given the absence of diversity, can only exist in the instant case if Garvin's cause of action can be made to arise under federal law. Garvin's cause of action can arise under federal law only if a federal statute provides a cause of action. However, the only federal statute here, the Longshoremen's and Harbor Workers' Compensation Act, does not create any right of action against third parties.[15]

quite distinct from the *merits* of Garvin's state-law claim.

*T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965), involved a different kind of "remoteness" problem—the undisputed issue. There, an action was brought pursuant to state contract and property law to determine the ownership of a federally-registered copyright. The Second Circuit held that there was no federal jurisdiction because the underlying federal issue—the validity of the copyright—was undisputed, and no interpretation of federal law was required. The decision did not turn on an application of the well-pleaded complaint rule, because the issue was clearly part of the plaintiff's cause of action. In order to establish its claim to the copyright, the plaintiff had to plead—and would have had to prove, had the allegation been denied—that the copyright was valid. The validity of the copyright was not part of a defense or of a response to a defense. *Harms* simply stands for the principle that a federal issue, even one that is properly part of the plaintiff's case, will not support jurisdiction if it is undisputed. The decision is therefore inapposite to the present case.

15. Although the argument is equally foreclosed by the lack of jurisdiction, Garvin may argue that he does not rely on the LHWCA to *create* a cause of action. His argument may run that South Carolina common law permitting the tort claims here asserted has existed undisturbed all along and that all he seeks to derive from the LHWCA, which clearly is entitled to supremacy over South Carolina law in case of conflict, *See* U.S. Const. Art. VI, is that the federal act has preempted South Carolina from enacting statutory workers' compensation provisions purporting to eradicate for statutory employers (nonemployers under the LHWCA) the *extant* South Carolina common law general remedies to which § 933 has pointed. However, if that argument is to be made, it should be advanced in state court, not before us.

Moreover, seductive though such an argument may be on the surface, it, on analysis, exalts

There is no section of the LHWCA which on its face clearly provides employees with a cause of action against third parties whose fault causes an injury. Only two sections, section 933(a) and section 905(b), could conceivably be interpreted as providing such a cause of action, but an inquiry reveals that Congress did not intend them to do so.

Looking first to section 933(a),[16] the language of the section indicates that employees are to retain their *existing* rights of action against third parties who are at fault. There is no indication that Congress intended to provide a new right of action against such persons. The liability of such persons is presumably to be determined according to otherwise existing law.[17]

A review of the legislative history of section 933(a) leads to the same interpretation. Section 933(a) was amended to substantially its current form in 1959. Prior to 1959, an injured employee was required to make an election of remedies. If he accepted compensation benefits under the LHWCA, he forfeited his right to sue any third-party tortfeasor whose fault might have caused the accident. In 1959, Congress intended to eliminate that restriction and to allow employees to sue third parties even if they chose to receive compensation benefits. There is no indication in the leg-

islative history of the amendments that Congress intended to provide a new, federal cause of action against third parties. *See* S.Rep. No. 428, 86th Cong., 1st Sess., *reprinted in* 1959 U.S.Code Cong. & Ad. News 2134–36. If anything, the Senate Report suggests that Congress merely intended to allow employees to pursue state law remedies, because it explains that "[t]he principle underlying the modification of the law made by this bill, is embodied in most modern state workmen's compensation laws." *Id.* at 2135. State workmen's compensation laws do not provide new causes of action; they allow employees to sue third parties under state tort law.

The conclusion that section 933(a) provides no federal right of action is also supported by the fact that most courts which have examined the LHWCA in an attempt to find such a right of action have not even considered section 933. *See Holland v. Sea-Land Service, Inc.*, 655 F.2d 556 (4th Cir.1981) (concluding that there is no federal cause of action against third parties under the LHWCA); *Russell v. Atlantic & Gulf Stevedores*, 625 F.2d 71 (5th Cir.1980) (same).

The only other section of the LHWCA that could arguably provide a right of action is section 905(b).[18] But it seems clear

---

form over substance. Statutes, of course, form as much the basic law of a state as do common law decisions. It seems clear that Congress meant to leave scope for the states to fashion and to limit rights of recovery in the area of worker-sustained injuries so long as the rights provided by the LHWCA are not interfered with. As I shall adduce, the congressional purpose was not, by a negative inference, to convert a statement that the LHWCA was not to take away other state developed rights into an establishment of positive law at war with state limitations on such other rights, a creation in the form of a second birth, if you will, assuming that any right in South Carolina for a worker to sue a statutory employer of the likes of Alumax has died with the enactment of S.C.Code Ann. § 42–1–540 (1976). For other reasons later alluded to, I am of the opinion that we, as a federal court, should not undertake an examination of whether, under state law, that death has occurred. At this juncture, however, we merely should determine whether *if* a death under state law has taken place, any basis for resurrection under federal law exists. For the reasons just stated, I think not.

16. Section 933 provides:

    (a) *Election of remedies*

    If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

17. This "background" law is state tort law if the injury occurs on a dock or a pier. It is general maritime law if the injury occurs on navigable waters.

18. Section 905(b) provides in relevant part:

    In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.

that section 905(b) does not provide a cause of action for Garvin. Looking first to the language of the section, it is plain that section 905(b) is concerned only with actions brought against vessels. It has no application to actions brought against land-based third parties. Moreover, the language suggests that, even against vessels, the section provides no *new* cause of action. Instead, it provides that an employee may bring an action "in accordance with the provisions of section 933." All that section 905(b) does, then, is to make clear that an employee may bring an action against a vessel under the general maritime law.

The legislative history supports this reading of section 905(b). It is clear from the House Report that the Committee on Education and Labor was concerned solely with injuries occurring aboard vessels. H.R.Rep. No. 92–1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 4698, 4701–05. The report also explains that the Committee intended that third-party actions against vessels should be governed by general principles of negligence, *id.* at 4702, 4703, 4704, but not by the negligence laws of the various states. Instead, federal courts should apply the general federal maritime negligence law, through the exercise of their admiralty jurisdiction. *Id.* at 4705. Thus, the legislative history indicates that Congress did not intend section 905(b) to create a new cause of action against parties other than vessels, and suggests that Congress did not intend to create a new cause of action at all.

This view is further supported by the case law. The Fourth Circuit has not directly confronted the issue, but our holding in *Holland v. Sea-Land Service, Inc.,* 655 F.2d 556 (4th Cir.1981) provides implicit support for the conclusion that section 905(b) does not provide a right of action against third parties other than vessels. In *Holland,* the court considered a situation similar to the one here: a third-party action brought by an employee injured on land against the operator of a port facility. The opinion explains why there was no admiralty jurisdiction, and does not expressly discuss whether there could be federal question jurisdiction. But the court's conclusion was that the employee had *no* federal cause of action, and that his claim arose solely under Virginia law.[19] Its holding necessarily implies that the LHWCA does not create any federal right of action, at least against parties other than vessels, and, therefore, that the LHWCA does not give rise to federal question jurisdiction in such circumstances. The Fifth Circuit has squarely held that section 905(b) creates no new right of action that could serve as a basis for federal question jurisdiction in any circumstances. *Christoff v. Bergeron Industries, Inc.,* 748 F.2d 297, 298 (5th Cir.1984); *Russell v. Atlantic & Gulf Stevedores, Inc.,* 625 F.2d 71, 72 (5th Cir.1980); *Parker v. South Louisiana Contractors, Inc.,* 537 F.2d 113, 118 (5th Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).[20] Consequently, the LHWCA does not provide Garvin with a statutory cause of action against Alumax in the context presented here.

If the LHWCA does not create a federal right of action, the only other possible way to argue that Garvin's claim "arises under" federal law is to contend that section 933 of the LHWCA incorporates state law, thereby turning the state law cause of action into a federal one. However, that approach also fails. First, section 933 does not say anything about incorporating state law; it only reassures employees that they retain their rights under state law and that they need not make an election of remedies. Second, even if section 933 does incorporate state law, there would still be no federal question jurisdiction. It has long been settled that there is no federal question jurisdiction where federal law incorpo-

---

**19.** Jurisdiction was retained on the basis of diversity. *Holland, supra,* 655 F.2d at 557.

**20.** *But see Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) (assuming, without deciding, that § 905(b) creates a statutory cause of action *against vessels* ).

rates state law as the rule of decision. *Shoshone Mining Co. v. Rutter,* 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900).

I therefore conclude that we have no jurisdiction to decide the present case, and that it should be dismissed for lack of jurisdiction.

### III

Because a dismissal for lack of federal jurisdiction would not, in my mind, resolve the dispute between the parties, the parties should be free to seek a resolution in the state courts of South Carolina.[21] Over and beyond our lack of jurisdiction, in my view, it would be preferable to allow the South Carolina courts to decide the merits of the present case, because that decision involves, purely and simply, an interpretation of South Carolina law. It is not appropriate to assume that indubitably South Carolina would apply the worker's compensation bar in favor of Alumax as a general contractor.

The success or failure of Alumax's immunity defense depends on the resolution of two issues. First, there is the question whether the immunity provisions of the South Carolina workers' compensation act apply, as a matter of state law, where the injured worker has elected not to receive benefits under the South Carolina act. Second, if the South Carolina immunity provisions apply, there is the question whether those provisions are invalid under the Supremacy Clause when applied in the present context, due to a conflict with federal law. The majority opinion addresses only the second issue, and does not discuss the first. Yet its determination that Alumax is entitled to judgment involves an implicit holding that the South Carolina statute grants immunity to Alumax despite Garvin's election of federal benefits. I do not believe that the answer to the state-law issue is so obvious and indisputable, and I would allow the parties to seek an interpretation of the South Carolina statute in the South Carolina courts.[22]

**21.** For reasons adduced in note 11, *ante,* I conclude that Garvin's "concession" that there is no state cause of action does not really exist, at least not in such a way as to bind him, foreclosing his initiation of an action in a South Carolina court. Even if it did, that would not somehow serve to confer the jurisdiction we lack, even for the limited purpose of foreclosing any state court proceeding which Garvin might elect to bring against Alumax. The existence *vel non* of a state cause of action, in my view, is totally irrelevant to the issue of whether we have any jurisdiction to rule on Garvin's claim.

**22.** In a similar situation, the Fifth Circuit appears to have interpreted the Louisiana workers' compensation statute to deny immunity to a general contractor where the injured employee opts for the LHWCA. *Jenkins v. McDermott, Inc.,* 734 F.2d 229, 233–34 (5th Cir.1984), *vacated,* 742 F.2d 191 (5th Cir.1984):

> Likewise, TAD, the plaintiff's employer (and an appellee third party defendant), suggests affirmance of the summary judgment as a matter of law on another ground. TAD argues that, since this land injury to a land-based harbor employee is subject to concurrent coverage of both federal longshoremen's and state compensation acts, *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (29980), concurrently applicable should be both the federal longshoremen's compensation remedy and also the state compensation-law bar to tort suits against third

> parties in a principal-contractor relationship with the plaintiff's employer.
>
> Issues sometimes do arise as to whether an injured workman has elected to pursue his federal compensation remedy *or* his state remedy, or instead as to whether his election of one necessarily excludes receiving not-inconsistent supplementary benefits from the other that do not amount to double recovery. *See* 4 Larson, Workmen's Compensation Law, §§ 89.50–89.74 (1984). In the present instance, however, the factual showing does not exclude that Jenkins has elected or will finally elect the federal remedy and not seek supplementary state compensation benefits, if indeed there are any not inconsistent with the federal remedy.
>
> In the present case, the state defense founded upon the state compensation act's coverage scheme, whereby in statutory exchange for his state compensation remedy an injured workman accepts it as the exclusive remedy against his employer and his employer's principal (as "statutory employer"), cannot survive a rejection of the state act's coverage and the election, instead, of the federal remedy.... As we indicated in a somewhat similar context, "the legislatively intended uniformity of treatment of maritime and amphibious workers, regardless of situs", would be thwarted if "differing remedies would be provided to workmen injured in the performance of the identical" mineral-production employ-

Under the South Carolina workers' compensation statute, employers who are liable to pay workers' compensation benefits receive immunity from tort suits. S.C.Code Ann. § 42–1–540.[23] The statute also provides that general contractors are liable for workers' compensation benefits payable to employees of their subcontractors. S.C. Code Ann. § 42–1–400.[24] The South Carolina Supreme Court has held that the immunity created by the statute extends to general contractors. *Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 267 S.E.2d 524 (1980); *Bridges v. Wyandotte Worsted Co.*, 243 S.C. 1, 132 S.E.2d 18 (1963). The general contractor is protected even where it is the subcontractor that actually pays the South Carolina workers' compensation benefits to the injured employee. *Parker*, 275 S.C. at 74, 267 S.E.2d at 528. Finally, the statute provides that every employee is presumed to have agreed to accept compensation under the terms of the statute for any personal injury arising out of his employment, unless he gives notice to the contrary prior to any accident. S.C.Code Ann. § 42–1–310.[25]

The question whether the South Carolina statute's immunity provision applies to protect Alumax here requires an interpretation of the statute. One view would be that the immunity provision bars any tort suit regardless of the injured employee's choice subsequent to the accident to accept benefits under the LHWCA to the exclusion of the South Carolina act's benefits. The other view would be that the statute creates a scheme that must be viewed as a whole. If the employee decides to opt out of the state scheme by receiving benefits under a different plan, he should not, the argument may run, be barred by immunity provisions that are a part of the state scheme, especially since those provisions are stated only on a presumption basis and the worker has

ment, depending upon where the injury was sustained.

The vacation in *Jenkins* resulted from the Supreme Court's issuance on June 26, 1984 of its decision in *Washington Metropolitan Area Transit Authority v. Johnson,* 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). However, the grounds for vacation were largely dissipated by the legislative overruling of *WMATA* which occurred in September, 1984. *See* 33 U.S.C. § 904(a), as amended by P.L. 98–426, 98 Stat. 1639 (1984).

While I do not cite the *Jenkins* case to suggest an unequivocal answer to the question of whether Garvin has a state cause of action where he has opted for LHWCA benefits and thereby waived state workers' compensation benefits, nevertheless it is authority for the proposition that the question is by no means an open and shut one. The legislature of South Carolina might, for uniformity reasons of the kind to which the *Jenkins* court alluded, hold the election to proceed under LHWCA a basis for rendering inapplicable the state law bar to a suit against a statutory employer such as Alumax.

23. Section 42–1–540 provides as follows:

The rights and remedies granted by this Title to an employee *when he and his employer have accepted the provisions of this Title,* respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and reme-

dies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

(Emphasis supplied).

24. Section 42–1–400 provides:

When any person, in this section … referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section … referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

25. Section 42–1–310 provides that:

Every employer and employee, except as stated in this chapter, shall be presumed to have accepted the provisions of this title respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment and shall be bound thereby, unless he shall have given, prior to any accident resulting in injury or death, notice to the contrary in the manner provided in § 42–1–340.

manifestly *not* accepted compensation under the South Carolina act.[26]

The South Carolina courts have not yet addressed the question of the application of the workers' compensation law when the injured employee turns instead to the federal LHWCA. In *Parker v. Williams & Madjanik, Inc.,* 275 S.C. 65, 267 S.E.2d 524 (1980), the South Carolina Supreme Court held that, where the injured worker receives compensation under the South Carolina act, the general contractor is immune from suit even though the benefits are actually paid by the subcontractor. However, that case did not involve the situation where the employee chooses to receive benefits under a federal workers' compensation program rather than the state program.

An argument that the general contractor should not receive immunity from suit where the employee has elected to receive benefits under a federal program would begin with the premise that the language of the statute cannot mean exactly what it says. Section 42–1–540 says that "[t]he rights and remedies granted by this title to an employee when he and his employer have accepted the provisions of this title ... shall exclude all other rights and remedies of such employee ...." Yet, as a flat statement, that language is inescapably false. In fact, in certain circumstances, such as the ones presently before us, an employee can elect to obtain compensation benefits under the LHWCA despite the statutory attempt to bar all remedies except those made available by the South Carolina statute. In those circumstances, the rights and remedies granted by the South Carolina act simply are not exclusive; the injured employee may avail himself of a different remedy.

The conflict here between the language of the statute and the reality that an em-

ployee may elect LHWCA benefits can be explained in one of three ways. It may be that the artificial presumption is not applied to the LHWCA-eligible employee, who is thus not deemed to accept the provisions of the South Carolina statute prior to injury. Alternatively, even if the employee is deemed to have accepted those provisions, it may be that there are no "rights and remedies granted by this title" when the employee has chosen instead to receive compensation under the LHWCA. Finally, the answer may be simply that the South Carolina compensation remedy is not the exclusive remedy available to the employee when injury occurs. I do not decide those questions. I merely point to them as reasons why there are substantial issues to be addressed properly by the courts of the State of South Carolina, rather than by a federal court palpably without jurisdiction. Regardless of which explanation is correct, it is clear that, under South Carolina law, the LHWCA-eligible employee is not limited exclusively to the state compensation remedy.

Once it is clear that the South Carolina compensation remedy is not exclusive for LHWCA-eligible employees, the question is which alternative remedies *are* allowed. It is possible that, in circumstances where the employee is eligible for benefits under the LHWCA, the statute could be construed to permit not only the remedy of LHWCA compensation benefits but also a tort remedy.

On the other hand, a construction of the statute that would grant immunity to a general contractor even where the employee chooses to receive federal benefits derives some support from *Home Indemnity Co. v. Poladian,* 270 F.2d 156 (4th Cir. 1959). In that case, the Fourth Circuit held that a Virginia general contractor was enti-

---

**26.** If the state statute creating a false presumption that a worker has accepted the state law benefits when, indisputably, he has done just the reverse by opting for LHWCA benefits, is nevertheless binding on the worker, it may be constitutionally suspect. In a series of cases, the Supreme Court has held that the use of irrebuttable presumptions may violate due pro-

cess. *E.g., United States Dept. of Agriculture v. Murry,* 413 U.S. 508, 514, 93 S.Ct. 2832, 2835, 37 L.Ed.2d 767 (1973); *Vlandis v. Kline,* 412 U.S. 441, 452–54, 93 S.Ct. 2230, 2236–37, 37 L.Ed.2d 63 (1974); *Stanley v. Illinois,* 405 U.S. 645, 656–58, 92 S.Ct. 1208, 1215–16, 31 L.Ed.2d 551 (1972).

tled to immunity from tort suits under the Virginia workmen's compensation act even though the injured employee had elected to receive compensation benefits under the District of Columbia workmen's compensation law.[27] The provisions of the Virginia statute considered there were substantially identical to those of the South Carolina statute involved here. 270 F.2d at 157 n. 3. However, it is by no means clear whether the court treated the matter as one of interpretation of the Virginia statute or as one of choice of law. The employee argued that Virginia tort law should not control his negligence action where he had elected to receive benefits under the District of Columbia worker's compensation law. The court held that Virginia law applied as a matter of choice of law, and then assumed, without analysis, that the Virginia statute granted immunity to the general contractor. A South Carolina court would certainly be free to interpret South Carolina's statute to reach an opposite result.

Policy considerations appear to cut both ways. On the one hand, a general contractor usually pays the cost of securing workers' compensation benefits for the subcontractor's employees as part of its overall contract with the subcontractor. If the general contractor may also be sued in tort, it must bear a double burden of potential liability.[28] On the other hand, a construction of the South Carolina statute allowing an injured employee who chooses to receive federal benefits to sue a general contractor would tend to equalize the overall packages of remedies available to workers injured on land and at sea. Under the federal maritime law, injured employees entitled to workers' compensation benefits may also recover damages against general contractors for negligence or unseaworthiness. *See, e.g., Pallas Shipping Agency, Ltd. v. Duris,* 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983); *Edmonds v. Compag-*

*nie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). It is arguable that, in the interest of equality of treatment, the South Carolina courts would allow a similar avenue of recovery to a maritime worker injured within the landward portion of the geographical area to which the LHWCA extends.

IV

In the present case, the court decides the merits of a matter over which we have no jurisdiction, and denies the parties an opportunity to seek an interpretation of a South Carolina statute in the South Carolina courts. I must, therefore, respectfully dissent.

---

27. The employee, a resident of the District of Columbia, apparently was entitled to choose between the two compensation programs.

28. A factor about which we have not been informed, but which might play a determinative role, is whether the opting out of the South Carolina statutory scheme by Garvin prior to the injury (in which case he incontestably would be allowed to proceed on his tort claim action) would have effected any significant premium saving to Alumax.