Kenneth Michael THERIOT, Plaintiff-Appellant Cross-Appellee,

v.

J. RAY McDERMOTT & COMPANY, INC., Defendant-Appellee Cross-Appellant,

American Mutual Liability Insurance Co., Intervenor-Appellee.

No. 82–3113.

United States Court of Appeals, Fifth Circuit.

Oct. 1, 1984.

---

Samanie & Barnes, Herbert William Barnes, Michael J. Samanie, Houma, La., for plaintiff-appellant cross-appellee.

Hailey, McNamara, McNamara & Hall, W. Marvin Hall, Metairie, La., for intervenor-appellee.

James R. Sutterfield, New Orleans, La., for J. Ray McDermott & Co., Inc.

Before REAVLEY, JOHNSON, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Kenneth Michael Theriot brought suit under the Jones Act, 46 U.S.C. § 688, and the general maritime law to recover damages against J. Ray McDermott & Company (McDermott) for injuries sustained during the course of his employment as a structural welder aboard McDermott Derrick Barge 17 in the Gulf of Mexico. In this appeal of the jury verdict[1] in his favor,

1. The case was tried to a jury except that the court granted a directed verdict in Theriot's

Theriot urges that the case be remanded to the district court for reconsideration of its calculation of Theriot's damages in light of *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir.1983) (en banc) (*Culver II*). On cross-appeal, McDermott argues that the district court erred in failing to order a new trial when the jury initially gave allegedly inconsistent answers to special interrogatories propounded to it by the court. McDermott also maintains that the evidence was insufficient to support the jury's finding of negligence on its part. McDermott further contends that the court committed reversible error in allowing the admission into evidence of an accident investigation report prepared by a McDermott employee. For the reasons set forth below, we affirm the judgment of the district court as to McDermott's liability, but remand on the issue of damages.

## I. *Facts*

In July 1980 Theriot was working as a contract welder for JRF Enterprises [2] when he was sent out at McDermott's request to work aboard McDermott's DB-17, which was engaged in the installation of a four-pile offshore well protector in the Gulf of Mexico. A well protector is a tight jacket platform with four legs (piles) which protrude around an open oil well to protect the well from boats and other marine traffic. Theriot's job was primarily to weld the legs onto the jacket. When Theriot began his shift ("came on tower") on July 3, 1980, he was assigned the task of making welding repairs on the stabbing guide of one of two steam-powered, pile driving hammers that were out of operation. There were two separate crews of welders working on the hammers—McDermott welders and contract welders. The hammer that the McDermott welders were repairing had been disassembled, that is, the stabbing guide had been removed so that the damaged portions were easily accessible. The hammer that Theriot was assigned to work on was not similarly taken apart. Before beginning work, Theriot inquired of Nolan Richard, the welder who preceded him on the job, as to the reason that their hammer had not been disassembled. Richard responded that McDermott was in a hurry for the repairs to be completed. Theriot began welding, but found that he had to assume uncomfortable and awkward positions in order to perform his welding tasks. He then requested of Wilton Hymel, McDermott's acting welder foreman, that the hammer be taken apart. The hammer was never disassembled. Theriot therefore continued welding, again assuming the required difficult and awkward positions. Sometime later, as Theriot attempted to extricate himself from underneath the stabbing guide, he experienced sharp pains in his lower back which radiated into his right leg. Theriot was later diagnosed as suffering from a herniated disc in the lower back. He has undergone surgery for a laminectomy and a spinal fusion. Theriot is expected to never be able to return to work in the oil fields.

## II. *District Court Proceedings*

In his complaint, Theriot contended that his injuries were a direct result of McDermott's failure to provide him with a safe place in which to work. At trial, Theriot proceeded on the theory that the easiest and safest method of performing welding repairs on the stabbing guide required that the hammer first be disassembled. Wilton Hymel, the welder foreman on Theriot's shift, testified that he could not recall whether or not Theriot requested that the hammer be taken apart. He further testified that from a welder's perspective, a hammer would have to be disassembled each time that it needed repairs because it made the welder's job easier; from a job point of view, however, a hammer could not be disassembled each time because a crane and a crew of riggers was necessary to

favor on the issue of seaman status. Defendant does not challenge plaintiff's seaman status on appeal.

2. JRF Enterprises is a type of welder brokerage firm which supplies welders to various companies. It was not a party to this suit.

take a hammer apart. If a crane was unavailable, or there was insufficient time, the welding repairs were made with the hammer intact. In response to defense counsel's question regarding the general procedure in making welding repairs on a cracked stabbing guide, Hymel answered: "Get it fixed as fast as you can." Record Vol. III at 58. On redirect examination, Hymel admitted that other men had previously been injured while working on the hammer when it was not dissassembled.[3] Id. at 103. Hymel also testified that he knew the hammer "backwards, insides, and forward" and that from experience, he knew that the hammer should be taken apart to be worked on. Id. at 106. Hymel further conceded that in completing an accident report on the incident, he listed "congested area" as the mechanical or physical hazard which contributed to Theriot's injury because of his familiarity with the hammer. Id.

The testimony of Larry Thibodeaux, the supervisor on the shift immediately preceding Theriot's duty, was basically the same as Hymel's concerning the general procedure for making repairs on the stabbing guide. Nolan Richard, the worker who started the repairs on the stabbing guide before Theriot began his shift, testified that he had requested of Thibodeaux that the stabbing guide be removed from the hammer before he first attempted the welding job. Indeed Richard testified that a welder would have to be a contortionist in order to assume the position necessary to perform the required welding repairs with the hammer intact. Richard also stated that he informed Theriot that he had asked Thibodeaux to have the hammer disassembled but that his request had not been acted upon.

We first address the issues raised by McDermott's cross-appeal.

IV. *The Jury Verdict*

The jury was submitted interrogatories to which it gave the following responses:

1. Was defendant J. Ray McDermott, Inc. negligent in a manner that was a cause of injury to plaintiff Kenneth Michael Theriot on or about July 3, 1980?

Yes.

2. Was the vessel DB 17 unseaworthy in a manner that was a proximate cause of injury to Mr. Theriot?

No.

3. Was plaintiff Kenneth Michael Theriot negligent in a manner which contributed to causing his own injury?

Yes.

4. If your answer to # 3 was "yes" then to what extent did Mr. Theriot's own negligence contribute to his own injury? (Any answer to this question should be in the form of a percentage.)

5%.

5. Fill in the amounts in the spaces below which fairly and adequately compensate plaintiff for his damages. In the event that as to any of the following items you should find that plaintiff is not entitled to damages, you should write "None" in the blank and go on to the next one.

(a) The amount, if any, he is due for lost income from the date of the accident (July 3, 1980) to the present date?

$34,000.00.

(b) The amount, if any, he is due for loss of earning capacity in the future without regard to economic trends (such as inflation) whatsoever?

None.

(c) The amount, if any, he is due for loss of earning capacity in the future taking

---

**3.** While we do not rely on this testimony as a basis for our decision, we note in passing that Hymel stated in deposition testimony that some of the prior injuries on this piece of equipment resulted from the welders having to work in awkward positions. Deposition of Hymel at 51–52.

into consideration possible economic trends (including inflation)?

$250,000.00

(d) The amount, if any, due him for physical disability and physical and/or mental pain and suffering, past, present, and future?

$50,000.00.

Court Exh. 2; *see* Record Vol. II, at 253–54.

 Without revealing the contents of the verdict to either party, the district court again instructed the jury regarding future lost income with and without regard to inflation. He then returned the jury for further deliberations. When the jury returned a second time, it had drawn a line through "none" in question 5(b) and entered the sum $160,000. McDermott argues that the court should have ordered a new trial when the jury initially returned allegedly inconsistent responses in questions 5(b) and (c). We disagree. It is undisputed that McDermott's counsel made no request to see the first verdict form, nor was any objection made when the jury was sent back for further deliberations. It is well settled in this Circuit that a party who fails to object to the resubmission of a jury verdict at trial cannot later complain of the court's action on appeal. *Safeway Stores, Inc. v. Dial,* 311 F.2d 595, 599 (5th Cir. 1963); *accord Landry v. Offshore Logistics, Inc.,* 544 F.2d 757, 761 (5th Cir.1977); *see Belton v. Fibreboard Corp.,* 724 F.2d 500, 506 (5th Cir.1984).

## V. *Sufficiency of the Evidence*

 McDermott next argues that the court erred in denying its motion for directed verdict and judgment notwithstanding the verdict on the issue of liability. In Jones Act cases, a directed verdict or j.n. o.v. is proper only where there is a complete absence of probative facts supporting the nonmover's position. *Wallace v. Oceaneering International,* 727 F.2d 427, 431 (5th Cir.1984); *Thezan v. Maritime Overseas Corp.,* 708 F.2d 175, 180 (5th Cir.1983) *cert. denied,* —— U.S. ——, 104 S.Ct. 729,

79 L.Ed.2d 189 (1984); *see, Boeing Co. v. Shipman,* 411 F.2d 365, 372 (5th Cir.1969) (en banc). Moreover, the standard of review that this Court must employ to test the sufficiency of the evidence in a Jones Act claim is whether there is a reasonable evidentiary basis for the jury's verdict. *Thezan,* 708 F.2d at 181. Indeed, where there is an evidentiary basis for the jury's findings, our function is exhausted, and the appellant is not free to relitigate the factual dispute. *Id.* Being guided by the principle that a Jones Act defendant must bear the responsibility for his negligence if such negligence played any part, *even the slightest,* in producing the injury, *see, Landry v. Oceanic Contractors, Inc.,* 731 F.2d 299, 303 (5th Cir.1984), we conclude that the evidence as discussed hereinabove clearly demonstrates a reasonable evidentiary basis for the jury's verdict.

 We are also unpersuaded by McDermott's contentions that Theriot was in complete control of his working conditions. There was evidence to the effect that Theriot had the freedom to rig scaffolding to aid him in his welding tasks. Theriot testified, however, "I couldn't use a board because I didn't have enough room to lay on a board to stick my head in there to see to weld." Record Vol. III at 223. Furthermore, the evidence is uncontroverted that Theriot did not have the authority to utilize the equipment necessary to disassemble the hammer. To the contrary, the evidence showed that Theriot's request that the hammer be taken apart (as well as Richard's prior request) was not acted upon by the McDermott employees who were supervising the operation and who had the authority to order that the hammer be disassembled. Thus, the evidence was more than ample to support the jury's finding of McDermott's negligence through Hymel's and Thibodeaux's failure to, at the very least, investigate the necessity and feasibility of having the hammer disassembled.

McDermott further invites this Court to set aside the jury's finding that Theriot was five percent contributorily negligent as

an "absurdity." Because of the principles noted above, we decline.

## VI. *Accident Report*

During direct examination of Hymel, Theriot's counsel sought to elicit testimony regarding Hymel's investigation of Theriot's injury. Hymel's responses indicated that he had no independent recollection of conducting an investigation. Theriot's counsel was then allowed, over defendant McDermott's objection, to introduce into evidence a "Personal Injury Investigation Form" that was prepared by Hymel on the date of Theriot's injury. The report indicated that the unsafe act that contributed to Theriot's injury was that the "[h]ammer should be taken apart to be worked on." Plaintiff's Exh. 5.

Prior to trial, the court had sustained McDermott's objection to the proposed introduction of the report. In a bench conference during trial the judge noted that he was allowing admission of the document due to the "witness' lack of memory and certain reluctance on his part to testify." Record Vol. III at 71. The court also deleted a portion of the report that it felt would be unduly prejudicial to McDermott. On appeal, McDermott asserts that the document was inadmissible on the grounds of relevancy, hearsay, undue prejudice, and the best evidence rule. We conclude, however, that the report was properly admissible as an admission by a party-opponent. Fed.R.Evid. 801(d)(2).

Fed.R.Evid. 801(d)(2) provides in part:

(d) Statements which are not hearsay. A statement is not hearsay if—

\* \* \* \* \* \*

(2) Admission by party-opponent. The statement is offered against a party and is ... (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship....

McDermott does not contend that Hymel was not authorized to prepare the report; instead McDermott argues that Hymel was authorized to make the statements only to McDermott. This argument must fail. Under the clear precedent of this Circuit, an agent's statement, made within the scope of his authority, but made only to the principal himself, is admissible against the principal as an admission. *Collins v. Wayne Corp.*, 621 F.2d 777, 781–782 (5th Cir.1980); *United States v. Lykes Bros. Steamship Co.*, 432 F.2d 1076, 1077–78 (5th Cir.1970). In the instant case, one of Hymel's duties as a foreman for McDermott was to investigate the circumstances of injuries to workers under his supervision and to prepare reports detailing the results of his investigation. Therefore the admission of the report into evidence was proper. In any event, McDermott has failed to demonstrate that the admission of the report into evidence affected its substantial rights. *See* Fed.R.Civ.P. 61.

## VII. *Damages*

At trial, the court allowed Theriot to introduce evidence of wage increases that he would have received as a result of productivity and inflation. The jury was instructed to make alternative damage award calculations—with consideration of economic trends such as inflation and without consideration of such trends. Judgment was then entered by the court utilizing the non-inflationary figure in accordance with the then current precedent of *Johnson v. Penrod Drilling Co.*, 510 F.2d 234 (5th Cir. 1975) (en banc). *Penrod* was overruled by *Culver v. Slater Boat Co.*, 688 F.2d 280 (5th Cir.1982) (en banc) (*Culver I*), which allowed the trial court to choose damage calculation methods on a case-by-case basis. On rehearing of *Culver I*, this Court modified its holding to require the exclusive application of the below-market discount rate method. *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir.1983) (en banc) (*Culver II*). Because the inflation-discount issue was raised in the district court, we must vacate the award of damages and remand for further proceedings in accord-

ance with *Culver II. See Martin v. Missouri Pacific Railroad Co.*, 732 F.2d 435, 436 (5th Cir.1984).

Theriot also maintains that he is entitled to an award of prejudgment interest. Since Theriot did not prevail on his unseaworthiness claim, his sole basis for recovery is Jones Act negligence. It is well settled that in an action at law under the Jones Act, the recovery of prejudgment interest is not permitted. *Doucet v. Wheless Drilling Co.*, 467 F.2d 336, 340–41 (5th Cir.1972); *Sanford Bros. Boats v. Vidrine*, 412 F.2d 958, 972–73 (5th Cir.1969).

Accordingly, the judgment of the district court is affirmed in part and vacated and remanded as to damages only.

**AFFIRMED IN PART VACATED AND REMANDED AS TO DAMAGES ONLY.**