Johnny C. COLBURN,
Plaintiff–Appellee,
Cross–Appellant,

v.

BUNGE TOWING, INC., and M/V TERRY K, Defendants–Appellants,
Cross–Appellees.

No. 88–4464.

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1989.

---

E. Spivey Gault, C.W. Walker, III, Lake, Tindall, Hunger & Thackston, Greenville, Miss., for plaintiffs-appellants, cross-appellees.

David E. Crawley, Jr., Crawley & Ford, Kosciusko, Miss., Philip Mansour, Mansour & Mansour, Greenville, Miss., for defendant-appellee, cross-appellant.

Before GOLDBERG, JOHNSON, and DUHE, Circuit Judges.

DUHE, Circuit Judge:

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff-appellee Johnny C. Colburn ("Colburn") was employed as a mate aboard the towboat M/V Terry K., owned by defendant-appellant Bunge Towing ("Bunge"). In November 1985 he injured his back when he slipped and fell on the deck of a barge being added to the TERRY K's tow. The injury occurred while he was attempting to cut a metal retaining band from a spool of steel cable by striking it with a maul.[1]

Bunge fired the first salvo in this litigation by filing a declaratory judgment action seeking a determination of its maintenance and cure obligations to Colburn. Colburn thereafter brought a claim against Bunge for unseaworthiness and Jones Act negligence.[2] At trial, the Jones Act negligence and unseaworthiness claims went to the jury on two theories of liability: 1) an accumulation of grain dust and dew caused the barge to have an unreasonably slippery deck, and 2) it was unsafe to use the maul to cut the retaining bands.

The jury awarded Colburn $450,000 on the alternate theories of Jones Act negligence and unseaworthiness and found that he was entitled to continued maintenance and cure. The trial court entered judgment for $450,000 plus prejudgment interest; $20 per day maintenance from March 31, 1987, until ninety days after Colburn submits to back surgery; unpaid medical expenses of $9,348.86; and future medical expenses. Bunge appeals. Colburn cross-appeals the trial court's refusal to consider his claim for punitive damages due to Bunge's alleged arbitrary and capricious termination of maintenance and cure benefits.

## II. LIABILITY

Bunge contends that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict on Jones Act liability.

"In Jones Act cases, a directed verdict or j.n.o.v. is proper only when there is a complete absence of probative facts supporting the nonmover's position." *Theriot v. J. Ray McDermott & Co.*, 742 F.2d 877, 881 (5th Cir.1984) (citations omitted). "Moreover, the standard of review that this Court must employ to test the sufficiency of the evidence in a Jones Act claim is whether there is a reasonable evidentiary basis for the jury's verdict." *Id.*

■ Bunge first argues that even if there was evidence that the condition of the barge deck was unsafe, there was no proof that Bunge had knowledge of the unsafe condition. While a Jones Act employer's duty to provide a safe place for the seaman to work is a broad one, *Bobb v. Modern Products, Inc.*, 648 F.2d 1051, 1057 (5th Cir.1981), the employer must have notice and the opportunity to correct an unsafe condition before liability attaches. *Perry v. Morgan Guaranty Trust Co. of New York*, 528 F.2d 1378, 1380 (5th Cir.1976). The standard of care is not "what the employer subjectively knew, but rather what it objectively knew or should have known." *Turner v. Inland Tugs Co.*, 689 F.Supp. 612, 619 (E.D.La.1988).

■ While there was conflicting testimony as to whether the presence of grain dust and dew on the barge deck caused a dangerous condition, the jury could have credited Colburn's testimony that the deck was "slippery as ice." There was further evidence that grain barges will have residue remaining on deck from the loading process, and that the TERRY K's captain should have either inspected the deck of the barge or ascertained its condition from the loading elevator before accepting it for the tow or allowing crew members to work

1. A maul is an implement similar in design to a sledge hammer but with an ax blade on one side.

2. Bunge had terminated Colburn's maintenance and cure payments on March 31, 1987.

Prior to trial, the parties were realigned making Colburn the plaintiff.

on it. The jury could have inferred that Bunge should have known of the unsafe condition.

Bunge further contends that no evidence was presented that it was unsafe to cut the retaining band with a maul. We disagree. The Terry K's captain testified that he would have prevented the crew from using the maul for this purpose had he known of this practice. This is sufficient evidence for the jury to infer that the use of the maul by Colburn for this purpose was unsafe.

While we don't find the evidence supporting the Jones Act negligence verdict to be overwhelming, only the slightest negligence need be shown to uphold the jury verdict. *Perry v. Morgan Guaranty Trust Co. of New York*, 528 F.2d at 1380. Colburn has met this evidentiary burden.[3]

## III. TRIAL ERRORS

Bunge contends that its motion for a new trial should have been granted because of prejudicial tactics and remarks by Colburn's counsel during opening argument and trial testimony.[4] Despite over twenty instances of alleged prejudicial tactics and remarks, Bunge objected on only three occasions, and two of these objections were sustained. We are reluctant to address for the first time on appeal alleged errors which the trial court was not given an opportunity to consider and correct, unless it would result in a substantial miscarriage of justice. *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir.1975). Here, we are not persuaded that Colburn's tactics and comments during opening argument

and trial testimony are sufficiently prejudicial that if left uncorrected would result in a substantial miscarriage of justice.

Bunge also complains about remarks made by Colburn's counsel during closing argument. "A district court may order a new trial if improper closing argument irreparably prejudices a jury verdict. The grant or denial of a new trial will not be reversed unless the district court abused its discretion...." *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir.1988).

The propriety of Colburn's closing argument must be reviewed "within the context of the court's ruling on objections, the jury charge, and any corrective measures applied by the trial court." *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir.1985). "[A] trial judge is generally better able than an appellate court to evaluate the prejudice flowing from improper jury arguments.... [He is] best able to measure the impact of improper argument, the effect of the conduct on the jury, and the results of his efforts to control it. Our review is not only hindsight, but is based on a written record with no ability to assess the impact of the statement on the jury or to sense the atmosphere of the courtroom." *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778 (5th Cir.1983).

During closing argument, Colburn's counsel made reference to Bunge's use of "gestapo-type" surveillance of Colburn, humiliation Colburn endured because of financial hardships, Bunge's violation of Colburn's constitutional rights, the need for

---

**3.** Since we find that Bunge's liability is properly supported on a Jones Act negligence theory, we need not reach their contention that the trial court's unseaworthiness instruction was improper.

**4.** In support of its prejudice argument, Bunge first points to comments made during Colburn's opening statement:

> The proof is going to show that [Bunge] ... filed suit.... Our doctors, they say, tell us that the man is as well as he's going to get. Other doctors say he's not well. He needs further medical attention. We are under a duty to pay him. We want this court to decide on whether or not he's reached maxi-

mum medical cure. But before this court had an opportunity to decide, they cut this man off. They quit paying his medical bills....

Other examples of prejudice Bunge complains about include: While Colburn was allowed to testify that he was evicted from his home after his injury, Bunge was not allowed to present testimony on why he was evicted; Colburn's counsel characterized Bunge's surveillance activities as "spying," remarked that Bunge substituted its judgment for that of the doctors treating Colburn, and accused Bunge of dealing unethically with Colburn by taking his statement after he had already hired an attorney.

Bunge to be punished, and the economic disparity of the parties. As with Bunge's complaints about prejudicial conduct during opening argument and trial testimony, it has chosen to wait until after the trial to address all but two statements made by Colburn's counsel during closing argument. The only statement objected to was the remark pointing out the disparity between "the rich and mighty [Bunge]" and the "poor and humble [Colburn]." The objection was sustained, and Colburn's counsel immediately followed up his remark by telling the jury that corporations are treated as equals of any other party. The jury charge also contained an instruction that "all persons, whether individuals or corporations, stand equal before the law and are to be dealt with as equals in a court of justice."

In response to Colburn's argument that it used "gestapo-type" surveillance, Bunge told the jury during its closing argument that surveillance was necessary because Colburn had not been truthful concerning his injury.

Bunge did not move for a mistrial because of any of the remarks complained of, but apparently chose to gamble on the verdict. Since its strategy failed, we will not now entertain Bunge's argument that Colburn's trial tactics are grounds for a new trial. *Nissho–Iwai Co.*, 848 F.2d at 619; see *Skaggs v. J.H. Rose Truck Line, Inc.*, 435 F.2d 695 (5th Cir.1970) (failure to object to use of "golden rule" argument during closing argument precludes appellate review). We find no abuse of discretion here.

## IV. AMOUNT OF THE VERDICT

Bunge contends that the jury's general verdict awarding Colburn $450,000 is excessive, and that jury instructions pertaining to damages impermissibly affected the quantum of the award. Bunge makes several arguments, two of which have merit: 1) no cautionary instruction was given to ameliorate the effect of the "unit of time" argument made by Colburn's counsel, and 2) the jury was not instructed to discount the future wage loss award to present val-

ue. Recognizing that "[a]ssessment of damages is an uncertain art at best, and in the absence of a clear abuse of discretion in either direction, we must abide the jury's measure," *Ward v. Buehler*, 472 F.2d 1170, 1171 (5th Cir.1973) (citation omitted), we aren't persuaded that the amount of the award is *per se* excessive. We do, however, find that the jury charge in regard to damages was substantially flawed and resulted in prejudicial error.

### A. *Unit of Time*

During closing argument, Colburn's attorneys made a "unit of time" argument, suggesting to the jury that $1.00 per hour for the number of hours in Colburn's 47½ year remaining life expectancy, for a total of $420,000, would be a satisfactory measure of non-economic damages. Following the initial jury instructions, the trial court invited counsel to object to the charge. Bunge objected to the "unit of time" argument and tendered a proposed cautionary instruction. The trial court refused to give the instruction, stating that "[the instruction] should have been presented to the court at the time that the other instructions were, and to go back now ... would [be unduly] critical of [the plaintiffs argument]. The defendant had ample opportunity to answer that argument in [his closing] remarks...."

In *Baron Tube Co. v. Transport Ins. Co.*, 365 F.2d 858 (5th Cir.1966) (*en banc*), this Court held:

> [Reasons against allowing "unit of time" arguments] must be weighed against the desirability of allowing at least a modicum of advocacy in an adversary proceeding designed to determine plaintiff's damages. When so weighed, the scales are tipped to the side of advocacy. Thus, on balance, our view is that a unit of time type of argument is not improper *where accompanied by a suitable cautionary instruction.* (emphasis added)

*Id.* at 864. In discussing safeguards that a trial court should take to protect against the potential prejudicial effect of such an argument, we stated:

[The] court should ... make it clear to the jury that the unit of time argument is merely a method of presenting contentions, and is not to be considered as evidence. This may be done at the time the argument is made, or in the charge to the jury, or on both occasions.... We hasten to reiterate that these matters, except for requiring a cautionary instruction, are left to the discretion of the trial court.

*Id.* at 865.

Our most recent consideration of the "unit of time" argument was in *Westbrook v. General Tire & Rubber Co.,* 754 F.2d 1233. In *Westbrook,* defendants did not object at trial to the plaintiff's use of the "unit of time" argument, did not request a cautionary instruction and did not, on appeal, directly challenge the utilization of the "unit of time" argument. Rather, the defendants simply claimed that the amount of verdict was excessive. *Id.* at 1240. In reviewing the amount of the verdict, we noted *sua sponte* that a "unit of time" argument was made without a cautionary instruction. *Id.* at 1238. Reversing the damage award, we emphasized that *Baron Tube* requires that a cautionary instruction must be given to "ameliorate the effects of a unit of time argument." *Westbrook,* 754 F.2d at 1240. Without a specific cautionary instruction, there is a danger that this argument will create an illusion in the jury's mind that pain and suffering damages can and perhaps should properly be measured or calculated by simple multiplication rather than through the jury's sound discretion. *Baron Tube,* 365 F.2d at 864.

■ The blanket cautionary instruction given in this case that "any statements, objections, or arguments made by lawyers are not evidence in this case," and "[w]hat the lawyers say is not binding upon [the jury]" inadequately addresses our concerns with the use of the "unit of time" argument. An appropriate instruction would inform the jury that the dollar figure advanced by counsel in making the "unit of time" argument does not constitute evidence but merely represents argument which the jury is free to disregard in its deliberations. *Mileski v. Long Island R.R. Co.,* 499 F.2d 1169, 1174 (2d Cir.1974). The trial court erred by not giving a specific cautionary instruction.

### B. *Present Value Instruction*

The jury was instructed that if it found Bunge liable part of any damages awarded would include lost future earnings. Whenever lost future earnings are included in a damage award, the jury must be instructed that a reasonable adjustment must be made for its present value. *See Monessen S.R. v. Morgan,* 486 U.S. 330, 108 S.Ct. 1837, 1844, 100 L.Ed.2d 349 (1988); *St. Louis S.R. Co. v. Dickerson,* 470 U.S. 409, 105 S.Ct. 1347, 1348–49, 84 L.Ed.2d 303 (1985); *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 2550, 76 L.Ed.2d 768 (1983); *Culver v. Slater Boat Co.,* 722 F.2d 114, 117 (5th Cir.1983), *cert. denied sub nom., Heinrich Schmidt Reederei v. Byrd,* 467 U.S. 1252, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984) and *cert. denied sub nom., St. Paul Fire & Marine Ins. Co. v. Culver,* 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984). No such instruction was given here.

■ Amazingly, Bunge failed to object at trial to the court's failure to include a "present value" instruction. We may still reverse for plain error. *Nowell v. Universal Electric Co.,* 792 F.2d 1310, 1316 (5th Cir.) (citations omitted), *cert. denied,* 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986); *Patton v. Archer,* 590 F.2d 1319 (5th Cir.1979); Fed.R.Civ.P. 51. Since the jury was instructed to include future damages in its award, we find this omission to be plain error.

### C. *Effect of Errors*

■ When viewing the jury charge, we are bound to consider the instructions as a whole, the evidence presented, and the arguments of counsel. *Id.* at 1316. Reversible error exists when this court has a "substantial and ineradicable doubt as to whether or not the jury has been properly guided in its deliberations." *Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 425 (5th Cir. 1985). Here, we have such doubt. Allow-

ing a "unit of time" argument without a specific cautionary instruction and failure to instruct the jury on present value could have had a considerable effect on the amount of the jury verdict. We therefore vacate the $450,000 damage award.

## V. OTHER ISSUES

### A. *Prejudgment Interest*

Bunge contends that the prejudgment interest award was improper. Although the vacation of the damage award moots this issue, we address it now to provide guidance to the district court on remand.

■ The jury verdict in favor of Colburn was predicated on a finding of both Jones Act negligence and unseaworthiness. It is well settled that under the Jones Act, recovery of prejudgment interest is not permitted. *Theriot v. J. Ray McDermott & Co., Inc.*, 742 F.2d at 883 (citations omitted). When a damage award is based on a jury verdict finding both Jones Act negligence and unseaworthiness, without providing "any basis for determining which portion of the damage award, if any, is attributable to unseaworthiness rather than Jones Act negligence, it is impermissible to award prejudgment interest." *McPhillamy v. Brown & Root, Inc.*, 810 F.2d 529, 531–32 (5th Cir.1987); *Wyatt v. Penrod Drilling Co.*, 735 F.2d 951, 955–56 (5th Cir.1984).

Since we have found that Bunge's liability is supported by the jury's finding of Jones Act negligence, no prejudgment interest should be allowed on the damage award. *Theriot v. J. Ray McDermott & Co., Inc.*, 742 F.2d at 883.

### B. *Maintenance and Cure*

Bunge contends that the district court erroneously awarded Colburn medical expenses and maintenance in addition to the general damage award by the jury.

The district court must consider the extent to which a jury award includes amounts which are the substantial equivalent of maintenance and cure in order to eliminate the likelihood of double recovery.

*Pelotto v. L & N Towing Co.*, 604 F.2d 396, 404 (5th Cir.1979).

The trial court instructed the jury that on a finding of either Jones Act negligence or unseaworthiness, the damages awarded should include "his loss of earnings to date, his ... medical expenses, together with future ... medical expenses [and] loss of earnings." In the judgment the trial court ordered payment of $9,348.86 for past medical expenses, future medical payments, and payment of $20 per day maintenance.

■ First, we do not find the award of maintenance to be duplicative. In *Morel v. Sabine Towing & Transportation Co.*, 669 F.2d 345 (5th Cir.1982), we stated: "Maintenance is the equivalent of the food and lodging to which a seaman is entitled while at sea.... Maintenance is neither a substitute for wages nor is it to be considered in lieu of a seaman's wages, in whole or in part." *Id.* at 346. This decision was followed by *Ceja v. Mike Hooks, Inc.*, 690 F.2d 1191, 1197 (5th Cir.1982), where we found that a district court's deduction of maintenance paid from an award of past lost wages was erroneous. These cases make it clear that an award of maintenance by the trial court in addition to a general damage award that includes past and future wages is proper.

■ In regard to the cure award, the jury was instructed to include an award for past and future medical as a part of the general damages award. During closing argument, Colburn's counsel asked for the inclusion of these expenses as damages. If we assume the jury followed the court's instructions, it is apparent that the cure award was duplicative of medical expenses that were included in the general damage award. However, since the damage award is vacated, we will allow the cure award to stand, but on remand the trial court must clearly instruct the jury that any damage award must not include payments for medical expenses.

### C. *Termination of Maintenance and Cure*

Colburn cross-appeals as error the trial court's exclusion as a triable issue Col-

burn's claim for punitive damages because of Bunge's arbitrary and capricious termination of Colburn's maintenance and cure benefits.

"28 U.S.C. section 636(b)(1)(A) provides that a judge may request that a magistrate hear pre-trial matters pending before the judge ..., [and] [a]ppeals from the magistrates's ruling must be to the district court." *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 321, 66 L.Ed.2d 149 (1980) (*citing United States v. Reeds*, 552 F.2d 170, 171 (7th Cir.1977) (per curiam)); Fed. R.Civ.P. 72(a).

■ At a pretrial conference, a magistrate denied Colburn's motion to amend his counterclaim to include the "arbitrary and capricious" termination issue.[5] Colburn did not appeal the magistrate's denial of his motion to the trial court, thus we are without jurisdiction to consider it. *Keller v. Petsock*, 849 F.2d 839, 843 (3rd Cir.1988); *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1137 (5th Cir.1987) (*citing United States v. Renfro*, 620 F.2d 497 (5th Cir.1980) (law settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates)).[6]

## VI.   CONCLUSION

"In granting a new trial in whole or in part, we take care to avoid substituting our judgment for that of the jury ... [Therefore, as long as the] factual questions relating to damages are sufficiently distinct and independent of those questions pertaining to liability, damages can be tried separately." *Westbrook*, 754 F.2d at 1242 (citations

omitted).   Here, we find the evidence supports a finding that Bunge was liable on the Jones Act and maintenance and cure claim.   However, the failure to give the jury a cautionary instruction on the "unit of time" argument or an instruction to discount an award of future earnings to present value requires remand for a new trial on damages.

Accordingly, that part of the judgment awarding damages pursuant to a finding of Jones Act negligence and unseaworthiness is REVERSED and REMANDED for a new trial consistent with this opinion; the judgment is in all other respects AFFIRMED.

---

5. The pretrial order reflected both Colburn's desire to make punitive damages an issue as well as the magistrate's denial of his motion:
   (15) Whether plaintiff has arbitrarily stopped maintenance and cure payments to Mr. Colburn and whether [Colburn] can recover punitive damages for the plaintiff's refusal to pay these items of compensation and back payments and future payments due him and attorney's fees?
   [Colburn's] motion *ore tenus* at the pretrial conference to amend his counterclaim to assert a punitive damage claim was denied by the Court as untimely and is therefore not an issue.

6. On this issue, Colburn's reliance on *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380 (5th Cir. 1985), is misplaced.   In *Tullos*, we allowed an appeal of the district court's decision refusing to allow a jury charge on the issue of arbitrary and capricious denial of maintenance and cure even though no formal objection had been made at trial.   This is distinguishable from the case *sub judice* because in *Tullos* the decision appealed from was one made by the district court directly, not the magistrate; and *Tullos* involved failure to object to a jury charge, not failure to appeal a magistrate's decision.