Revised July 19, 1999

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 97-31294

---

JOHN P. FONTENOT, individually and as natural tutor, on behalf of Ashley Nicole Fontenot, Wanda Renee Fontenot, and John Parish Fontenot, Jr.,

                                    Plaintiff-Appellee,

VERSUS

DUAL DRILLING CO., ET AL.,

                                    Defendants,

ENSCO PLATFORM COMPANY,
                                    Defendant-Appellant.

---

Appeal from the United States District Court
For the Western District of Louisiana

July 2, 1999

Before DeMOSS, PARKER and DENNIS, Circuit Judges.

PARKER, Circuit Judge:

     Defendant-Appellant ENSCO Platform Company ("ENSCO") appeals the judgment for Plaintiff, John P. Fontenot ("Fontenot") in this personal injury action.  We reverse and remand.

**I. FACTS**

1

Plaintiff Fontenot began employment with Weatherford-Enterra, Inc. ("Weatherford") in 1994. Fontenot is borderline mentally handicapped with an IQ of approximately 70. Fontenot's wife died in October 1995, after which he was assigned to work onshore to allow him to tend to his three minor children and personal affairs. Five months later, Weatherford assigned Fontenot to a crew conducting casing operations on a stationary platform on the Outer Continental Shelf offshore Louisiana. Fontenot was part of a "pick-up crew," referring to the fact that most of the crew members had not worked with each other on prior jobs and, more specifically, Fontenot was not a regular member of the crew.

Weatherford's crew was hired to run casing from the offshore platform into the hole of a well. Each joint of casing had to be filled with drilling "mud." Fontenot was assigned the job of mud valve operator. He was to instruct the driller, an ENSCO employee, when each joint of casing was full of drilling mud so that the driller could turn off the flow of mud into the joint.

Initially, the mudline and pump that were being used did not require the active participation of Fontenot. Then Weatherford's supervisor, Leo Meche ("Meche"), requested that ENSCO change the pump and line to speed up the process of filling casing with mud. The line and pump were changed, and the new line included a valve on the end of the mudline with a handle that could open and close the valve. Meche instructed Fontenot and other persons on the rig not to close the mudline valve at any time while the mud pump was

2

running because it was dangerous to do so in light of the extreme pressure that could build up quickly in the line.  Despite these instructions, Fontenot closed the mudline valve.  Pressure built up, then was suddenly released, hurling Fontenot up into the derrick, badly injuring one of his fingers.

## II. DISTRICT COURT PROCEEDINGS

On January 27, 1997, Fontenot, individually and on behalf of his three minor children, brought suit against ENSCO, alleging that he was injured due to the negligence of ENSCO.  ENSCO answered, denying liability and affirmatively alleging comparative fault by Fontenot and "other parties."  Subsequently, Weatherford and Weatherford's workers' compensation insurer filed a Complaint of Intervention seeking to enforce their rights of subrogation to recover amounts paid to or on behalf of Fontenot.

The case proceeded to a jury trial on September 15, 1997.  The jury returned its verdict, finding Fontenot 25% at fault, ENSCO 75% at fault, and awarded total damages of $1,190,000 against ENSCO. The court entered judgment consistent with that verdict on October 3, 1997.  ENSCO filed a motion for new trial, which was denied. ENSCO appealed.

## III. ANALYSIS

### A. QUANTIFYING FAULT

### 1. District court ruling and standards of review

ENSCO contended at trial that, pursuant to Louisiana tort law,

the Jury Verdict Form should direct the jury to quantify Plaintiff's employer's fault. *See* LA. CIV. CODE ANN. art. 2323(A)(West 1997). The district court denied the request.

First, the trial court held that the Louisiana rule of comparative fault which requires quantification of employer fault is "inconsistent" with other federal law, specifically the Longshore and Harbor Workers Compensation Act, 33 U.S.C. §§ 901-950 ("LHWCA"), thereby precluding application of comparative fault to this case, pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). The district court articulated two alternative bases for its denial of ENSCO's request to have the jury quantify employer fault: one, the evidence would not support a jury finding that Weatherford had any responsibility for Fontenot's accident and, two, ENSCO's request was not timely filed. We consider each ruling in turn.

ENSCO's challenge to the district court's holding that state and federal law are inconsistent raises a question of law, which we review *de novo*. *See Reeves v. AcroMed Corp.*, 103 F.3d 442, 445 (5th Cir. 1997). Likewise, we review *de novo* the district court's ruling that the evidence was insufficient to go to the jury on this issue. *See* FED. R. CIV. P. 50. We review the district court's decision that the request was untimely for abuse of discretion. *See Emmons v. Southern Pacific Transp. Co.*, 701 F.2d 1112 (5th Cir. 1983).

4

## 2. Is Louisiana law inconsistent with LHWCA?

ENSCO points out that LHWCA is silent on the question of quantification of employer fault and that no other federal law is inconsistent with Louisiana tort law. Fontenot, on the other hand, agrees with the district court, taking the position that LHWCA sets out a "loss allocation scheme" based on the rule of joint and several liability which is inconsistent with quantification of employer fault.

The OCSLA provides that when an employee is injured while on the Outer Continental Shelf exploring for natural resources, compensation shall be payable under the provisions of the LHWCA. *See* 43 U.S.C. § 1333(b). The OCSLA also provides:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations . . . the civil and criminal laws of each adjacent State . . . are hereby declared to be the law of the United States for that portion of the . . . Outer Continental Shelf, and artificial islands and fixed structures erected thereon[.]

43 U.S.C. § 1333(a)(2)(A).

Under LHWCA, which is similar to other worker compensation schemes, an employer's liability to an employee who is injured on the job is essentially limited to payment of compensation. *See* 33 U.S.C. § 905(a). The LHWCA also allows the employee to recover for injuries resulting from the fault of third parties. *See* 33 U.S.C. § 933(a). The employee need not choose whether to receive compensation or to recover damages against a third person; he can

5

do both. *See id.* Election of receiving compensation can operate as an assignment to the employer of the employee's cause of action against third parties. *See* 33 U.S.C. § 933(b). However, the employee has the exclusive right to bring the cause of action against the third party for six months after the incident. *See id.*

Where an injured employee recovers from a third party, the fund recovered is charged first for the cost of the recovery, including attorney fees, next for reimbursement of the compensation paid by the employer and finally, any additional recovery is paid to the injured employee. *See* 33 U.S.C. § 933(f). If the amount due as LHWCA compensation is more than the amount recovered against the third party, the employer remains liable to pay the difference. *See* id. The employer must give consent for any settlement between an employee and a third party which is less than the total amount of compensation owed in order for the employee to continue receiving compensation. *See* 33 U.S.C. § 933(g).

Typically, when the employee files suit against a third party, the employer will intervene to recover the amount of compensation paid, just as Weatherford did in this case. However, as ENSCO emphasizes, the LHWCA is silent on the issue of quantification of employer fault.

Louisiana Civil Code, art. 2323, as amended in April 1996 as a part of a package of tort reform by the Louisiana legislature, provides, in pertinent part:

> In any action for damages where a person suffers injury,
> death, or loss, the degree or percentage of fault of all
> persons causing or contributing to the injury, death, or
> loss shall be determined, regardless of whether the
> person is a party to the action or a nonparty, and
> regardless of the person's insolvency, ability to pay,
> immunity by statute, including but not limited to the
> provisions of R.S. 23:1032, or that the other person's
> identity is not known or reasonably ascertainable.

LA. CIV. CODE ANN. art. 2323(A).

Art. 2323(A) requires the fact finder to apportion fault among all negligent parties regardless of whether the plaintiff can recover from a particular party or not. Once the fact finder makes the apportionment, such fault shall not be reallocated to any other party. *See* LA. REV. STAT. ANN. 23:1104 (West Supp. 1998) Therefore, fault must be attributed to a negligent employer even though the employer is immune from suit under the Louisiana Workers' Compensation Statute, LA. REV. STAT. ANN. 32:1023. *See id.* In *Keith v. U. S. Fidelity & Guar. Co.*, 694 So. 2d 180 (La. 1997), the Louisiana Supreme Court held that the amendments of art. 2323(A) requiring the quantification of fault of all tortfeasors were procedural and therefore should be retroactively applied to torts occurring prior to the effective date of the amendments, April 16, 1996. Consequently, the fact that Fontenot's injury occurred on April 8, 1996, does not preclude the application of art. 2323(A) to this case.[1] Thus, ENSCO argues that Weatherford's percentage of

---

[1]However, we note that the Louisiana Supreme Court has held that the 1996 amendment to art. 2324(B) is substantive and therefore applies prospectively only. *See Aucoin v. DOTD*, 712

negligence should have been determined by the jury and allocated accordingly, reducing the proportion of ENSCO's liability.

The LHWCA contains no express language addressing the subjects of allocation of fault or proportionate liability. Fontenot, while recognizing the absence of any express conflict, nevertheless concludes that LHWCA's scheme allocating the costs of accident injuries is inconsistent with Louisiana's scheme of comparative fault, relying upon *Peters v. North River Ins. Co*. of Morristown, N.J., 764 F.2d 306, 309-10 (5th Cir. 1985). In our view, *Peters* is factually and legally distinguishable and is therefore not controlling.

First, the Louisiana statute at issue in this case (§ 2323(A)), which requires the determination of the percentage of fault of all tortfeasors, had not been passed by the Louisiana Legislature when *Peters* was decided. Second, there was no contention from any party in *Peters* that the employer was at fault in any way for the injuries which Peters received. The sole issue in *Peters* was whether the injured worker and a third-party tortfeasor could deprive the employer of his statutory lien on the settlement proceeds by not notifying the employer of the settlement or by providing in the settlement agreement that the third-party tortfeasor would otherwise satisfy the employer's claim. Finally, Fontenot did not settle with the third-party tortfeasor, as Peters

So.2d 62, 67 (La. 1998).

8

did with the third party in his case; instead, there was a trial on the merits of Fontenot's claim against ENSCO in which the employer and its compensation underwriter intervened to assert their lien upon any judgment proceeds to the extent of sums paid to Fontenot as compensation benefits.

Next, we must consider whether § 905, the substantive LHWCA third-party practice provision, applies to this case. We conclude that it does not; it applies only when the third party is a *vessel*, and there is no vessel involved in this case. That provision reads, in pertinent part, as follows:

Negligence of vessel

> In the event of injury to a person covered under [LHWCA] *caused by the negligence of a vessel*, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action *against such vessel* as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. * * *

33 U.S.C. § 905(b) (emphasis added).

The portion of § 905 which is most relevant is § 905(c), which reads:

Outer Continental Shelf

> In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under this chapter by virtue of section 1333 of Title 43, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action *against such vessel* in accordance with the provisions of subsection (b) of

9

this section. Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person entitled to receive benefits under this chapter by virtue of section 1333 of Title 43 and the vessel agree to defend and indemnify the other for cost of defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees.

(Emphasis added.) In this case, Fontenot is "a person entitled to receive benefits under this chapter [LHWCA] by virtue of section 1333 of Title 43 [OCSLA]." It is explicit, therefore, that the only third party cause of action contemplated by subsection (c) is the one for "negligence of a vessel" which is to be brought in accordance with subsection (b).

The term "vessel" is defined in § 902(21) as follows:

(21) Unless the context requires otherwise, the term "vessel" means *any vessel upon which* or in connection with which *any person* entitled to benefits under this chapter *suffers injury or death arising out of or in the course of his employment*, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.

(Emphasis added.) There is no person or entity which meets this definition in this case, and there is clearly no vessel of any kind involved, much less one upon which any injury occurred. To the contrary, Fontenot was injured during the course of drilling activities on an oil and gas well located on a fixed platform on the outer continental shelf. The Supreme Court has expressly held that such activities are not maritime in nature. *See Herb's*

10

*Welding, Inc. v. Gray*, 470 U.S. 414, 421-25 (1985). Therefore, neither § 905(b) nor § 905(c) has any applicability to Fontenot's accident.

This distinction as to whether the third party against whom liability is sought is a vessel or is a non-maritime entity is not mere semantics. Our Circuit has consistently used this distinction to reach different results in the context of third party actions brought by LHWCA employees. For example, the doctrine of contributory negligence under state law as a bar to recovery has been applied to actions against non-maritime defendants under OCSLA, whereas the maritime rule of comparative negligence has been applied to vessel defendants. *See Bertrand v. Shell Oil Co.*, 489 F.2d 293 (5th Cir. 1973); *In re Dearborn Marine Serv., Inc.*, 499 F.2d 263 (5th Cir. 1974). As provided in § 905(c), non-maritime third parties are not prohibited from obtaining contractual indemnifications from LHWCA employers, whereas vessel owners are prohibited from doing so by § 905(b). *Tran v. Manatowoc Eng'g Co.*, 767 F.2d 223 (5th Cir. 1985); *Pippen v. Shell Oil Co.*, 661 F.2d 378 (5th Cir. 1981). Likewise, while the 1972 amendments to LHWCA did away with the strict liability doctrine of unseaworthiness as to vessel owners, this amendment did not prevent application of the Louisiana articles on strict liability to non-maritime defendants under Louisiana law. *See Olsen v. Shell Oil Co.*, 595 F.2d 1099 (5th Cir. 1979).

The other LHWCA provision relevant to third-party claims is § 933. Those parts of § 933 which pertain to an employee's legal action against a responsible third party provide:

Compensation for injuries where third persons are liable

(a) Election of remedies

If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

* * *

(f) Institution of proceedings by person entitled to compensation

If the person entitled to compensation institutes proceedings within the period prescribed in subsection (b) of this section the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against such third person. Such net amount shall be equal to the actual amount recovered less the expenses reasonably incurred by such person in respect to such proceedings (including reasonable attorneys' fees).

* * *

(i) Right to compensation as exclusive remedy

The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: *Provided*, That this

12

provision shall not affect the liability of a person other than an officer or employee of the employer.

33 U.S.C. § 933.[2]

These two statutory provisions, §§ 905 and 933, accomplish two separate things. Section 905 vests employees covered by LHWCA with a federal third-party cause of action against a vessel based on negligence. "The first sentence [of § 905(b)] addresses the recurring situation . . . where the party injured by the negligence of the vessel is a longshoreman employed by a stevedoring concern." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 263 (1979). That common tripartite situation addressed in *Edmonds* is not present in this case. There is no vessel in this case; there is no vessel owner in this case; there is no stevedore in this case; and the injured worker was not engaged in any activities related to loading or unloading a vessel at the time of his injury.

Section 933 establishes procedures by which third-party claims are to be prosecuted in the context of a predicate LHWCA claim. Any such third-party claim, unless it is a § 905(b) or (c) claim against a vessel, must be based on some external authority. *See Garvin v. Alumax of S.C., Inc.*, 787 F.2d 910, 917 (4th Cir. 1986).

---

[2] Other provisions of § 933 address, inter alia, circumstances in which the employer may pursue an action against the responsible third party (as the assignee of the injured employee's rights against the third party), *see* 33 U.S.C. § 933(b), (d) & (e), or in which the employee may enter into a settlement with the responsible third party, *see* 33 U.S.C. § 933(g). These statutory provisions are not implicated by the facts of this case.

13

In this case, because the third party tortfeasor was not a vessel, the external authority is the statutory law of the State of Louisiana, which imposes tort liability on a third party tortfeasor proven to be concurrently negligent. In fact, the Louisiana statute, § 2323, was itself applied to Fontenot's claim against ENSCO in that it is the source of the allocation of fault between Fontenot and ENSCO and the elimination of the common law rule of contributory negligence as a bar to a plaintiff's recovery.

Obviously, it is not inconsistent with OCSLA or LHWCA for Louisiana to impose third-party liability; § 933 expressly contemplates such an external law. If the scope of the third-party liability, as well as defenses to it, are established by state law, state law governs the question of whether a proportionate-liability rule applies. *Cf. Ferri v. Ackerman*, 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state law is in conflict with federal law." (citing U.S. Const. Art. VI, cl. 2)). More importantly, however, the proportionate-liability scheme imposed by Louisiana law cannot be *inconsistent* with federal law because there would be no third-party cause of action in this case had Louisiana not provided one. *Edmonds* is not to the contrary because that case dealt with the federal third-party cause of action created by § 905(b) involving a vessel.

14

In *Rodrigue v. Aetna Casualty & Surety Company*, 395 U.S. 352 (1969), the Supreme Court discussed in detail the legislative history underlying the enactment of OCSLA. *Rodrigue* involved two deaths occurring on fixed offshore platforms on the Outer Continental Shelf. The question was whether Louisiana tort law or the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.* ("DOHSA"), with its limitations on recoverable damages, would apply. A panel of our Circuit had held that DOHSA applied. The Supreme Court reversed and held that DOHSA did not apply to the platform-related deaths because Congress, in OCSLA, deliberately rejected the application of admiralty and maritime principles to fixed platforms. Therefore, Louisiana tort law applies on fixed platforms located on the Outer Continental Shelf. *See Rodrigue*, 395 U.S. at 366, 89 S. Ct. at 1842.

In reviewing the legislative history of OCSLA, the *Rodrigue* Court noted that there was some initial support in Congress for the application of maritime law to fixed platforms located on the Outer Continental Shelf. Ultimately, however, Congress rejected the notion that maritime principles should apply on fixed platforms located on the Outer Continental Shelf:

> [T]he admiralty action under [DOHSA] no more applies to these accidents actually occurring on the islands than it would to accidents occurring in an upland federal enclave or on a natural island to which admiralty jurisdiction had not been specifically extended.

395 U.S. at 366, 89 S. Ct. at 1842.

Two years after *Rodrigue*, the Supreme Court again considered the application of Louisiana law in connection with an accident arising on a fixed platform on the Outer Continental Shelf. In *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), the issue was whether Louisiana's one year prescriptive period would apply rather than the admiralty doctrine of laches. A panel of our Circuit held that, despite the holding in *Rodrigue* rejecting maritime law, the laches doctrine was applicable as a matter of "federal common law." The Supreme Court rejected this notion, stating:

> As we pointed out in *Rodrigue*, Congress recognized that *The Federal Code was never designed to be a complete body of law in and of itself and thus that a comprehensive body of state law was needed*. Congress also recognized that the special relationship between the men working on these artificial islands and the adjacent shore to which they commute favored application of state law with which these men and their attorneys would be familiar. *If Congress' goal was to provide a comprehensive and familiar body of law, it would defeat that goal to apply only certain aspects of a state personal injury remedy in federal court*. A state time limitation upon a remedy is coordinated with the substance of a remedy and is no less applicable under [OCSLA].

404 U.S. at 102-3, 92 S. Ct. at 353-54 (citations omitted, emphasis supplied). The Supreme Court rejected our Circuit's attempt to apply laches as a matter of "federal common law" because the approach "subverts the congressional intent documented in *Rodrigue* . . . that admiralty doctrines should *not* apply under the Lands Act." 404 U.S. at 104, 92 S. Ct. at 354 (emphasis supplied). In concluding its discussion regarding why Louisiana's prescription

16

statute would apply over the purported "federal common law" doctrine of laches, the Court stated:

> Congress specifically rejected national uniformity and specifically provided for the application of state remedies which demand state, not federal, statutes of limitation. Thus, Congress made clear provision for filling in the "gaps" in federal law; it did not intend that federal courts fill in those "gaps" themselves by creating new federal common law.

*Huson*, 404 U.S. at 104-105, 92 S. Ct. at 354.

Following the lead of the Supreme Court in *Rodrigue* and *Huson*, our Circuit has consistently rejected attempts of litigants to have "federal common law" override rules of Louisiana tort law in actions arising on fixed platforms on the Outer Continental Shelf. *See*, *e.g.*, *Marcel v. Placid Oil Co.*, 11 F.3d 563, 570-71 (5th Cir. 1994) (adopting Louisiana's rule on use of "pre-tax" wages in computing damages for wages and lost earning capacity); *Olsen v. Shell Oil Co.*, 708 F.2d 976, 983 (5th Cir. 1983) (adopting the Louisiana rule on inflation).

This Court has expressly noted that "the substantive right to recover against third parties is, of course, generally determined by law independent of the LHWCA." *Peters*, 764 F.2d at 310. That the LHWCA itself does not provide the rule of decision in actions against third parties is further highlighted by this Court's decision in *Olsen v. Shell Oil Co.*, 708 F.2d 976 (5th Cir. 1983). In discussing the LHWCA employer's independent action against a third party tortfeasor, this Court recognized that the foundation

17

of the claim was based on the underlying law governing the claim (maritime law or state law) and was not based on the provisions of the LHWCA itself. *See id*. at 981. Thus, we noted, in *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 416-17, 420 n. 23 (1969), the Court indicated that the stevedore's right of indemnity, if available, would be under federal maritime law. In the context of the OCSLA, we recognized that the insurer's remedy was under surrogate state law." *Olsen*, 708 F.2d 981 n. 3 (citations omitted).

In sum, OCSLA requires that we apply Louisiana law to the extent that it is consistent with applicable federal law (*i.e.*, LHWCA). To the extent that LHWCA addresses the problem of allocating fault to a third-party tortfeasor, its provisions are limited by their terms to situations involving the negligence of a third-party vessel. No vessel is involved in this case, thus the LHWCA third-party fault scheme is inapplicable, and we are left with the Louisiana law which imposes third-party liability and its rule of comparative fault as the governing law. Under Louisiana law, ENSCO was entitled to appropriate jury interrogatories to implement this rule and the district court erred by failing to so charge the jury.

### 3. Sufficiency of the Evidence on Employer Fault

ENSCO next contends that, contrary to the district court's ruling, there was sufficient evidence in the record to support a

jury finding that Fontenot's employer, Weatherford, was at least partially responsible for the accident. We agree.

In order to hold an employee negligent, the reasonableness of his conduct must be assessed *vis a vis* the conduct of his employer, using the following criteria: (1) relative knowledge of the danger by the supervising employee and the injured employee; (2) relative control over the employee's situation; (3) the degree to which the employee's conduct is voluntary; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger. *See Bridgewater v. State Through Dept. of Corrections*, 434 So.2d 383 (La. 1983). There was evidence that Weatherford knew of Fontenot's mental limitations and personal distractions, as well as the strengths and weaknesses of the other members of the pick up crew. Further, it was Weatherford's supervisor, Meche, who made the decision to change from the slower, but safer mudline and pump to the line and pump that exploded, causing Fontenot's injuries. Further a jury could have found that Weatherford, through Meche, required Fontenot to remain in his position despite his repeated closing of the valve. Based on the record before this court, the district court erred in determining that the evidence was insufficient for the jury to consider whether Weatherford bore some responsibility for the accident.

**4. Timeliness of ENSCO's Request**

In addition to the foregoing reasons for not allowing the jury

19

to quantify Fontenot's employer's fault, the district court stated: "The request was filed late, past the deadline." On examining the pleadings, we note that ENSCO asserted the defense of third-party fault in its answer and again in the Joint Pre-Trial Stipulations, although it is not entirely clear that the third party referred to in these early pleadings was Weatherford. On Friday, September 12, 1997, prior to the beginning of trial on Monday, September 15, 1997, ENSCO objected to the Jury Interrogatories submitted by Plaintiff and submitted its own Jury Interrogatories, specifically requesting that Weatherford's fault be quantified. The district court's scheduling order set a deadline of September 5, 1997 for submission of jury instructions and interrogatories. We are called on to decide whether the district court abused its discretion in refusing ENSCO's jury interrogatories, filed prior to trial, but one week beyond the deadline set by the scheduling order, on the basis that they were untimely filed. We conclude that such a decision would have been an abuse of discretion in the circumstances of this case. Further, it is not at all clear from the district court's language that, in the absence of the other factors which the court considered in reaching its decision, the late filing alone would have been sufficient to convince the district court to deny ENSCO's requested jury instructions.

## 5. Error in jury interrogatories requires reversal and remand

Because we have determined that the three bases articulated by

20

the district court for refusing ENSCO's request for jury interrogatories quantifying employer fault do not support that decision, we conclude that the denial was error. We therefore must reverse and remand this case for further proceedings. However, one other issues raised on appeal may recur on remand. We therefore address it as well.

## B. UNIT OF TIME ARGUMENT

ENSCO contends that the district court's failure to give the jury a cautionary instruction regarding Fontenot's "unit of time" argument was error. "Jury verdicts on damages may be overturned only upon a clear showing of excessiveness or upon a showing that they were influenced by passion or prejudice." *Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir. 1985). However, if we are persuaded that the jury charge "was substantially flawed and resulted in prejudicial error," we will reverse. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 376 (5th Cir. 1989).

Over ENSCO's objection, Fontenot made the following "unit of time" argument in closing:

> [H]ow about $2 an hour? $2 an hour for the physical pain and suffering, the mental anguish, the scarring and disfigurement, the permanent loss of the use of his hand, $2 an hour for the rest of his life. $16 for half a day, $32 a day. The figures I came up with were $125,000 for physical pain and suffering. For mental anguish, $75,000. . . . And for the disability, the fact that he has to walk around for the rest of his life with his hand in the way that it is, $280,000.

21

In *Colburn*, 883 F.2d at 377-78, this court reversed a jury verdict based on the district court's failure to give a cautionary instruction to counter the prejudicial effects of the "unit of time" argument made by plaintiff's counsel, reasoning:

> Without a specific cautionary instruction, there is a danger that this argument will create an illusion in the jury's mind that pain and suffering damages can and perhaps should properly be measured or calculated by simple multiplication rather than through the jury's sound discretion.

*Id.* at 377 (citing *Baron Tube Co. v. Transport Ins. Co.*, 365 F.2d 858, 865 (5th Cir. 1966)(en banc)). The *Colburn* court noted that the "blanket cautionary instruction given in this case that 'any statements, objections, or arguments made by lawyers are not evidence in this case' inadequately addresses" the Court's concern with the use of "unit of time" argument. *Id*.

Given this court's rulings in *Baron Tube* and *Colburn*, the district court's failure to give the instruction was error. Fontenot does not dispute that this circuit's jurisprudence requires a specific cautionary jury instruction when plaintiff makes a "unit of time" argument. However, he argues that ENSCO invited the error. Fontenot included the necessary instruction in the Joint Jury Charges that were submitted by the parties pursuant to the district court's pretrial order. ENSCO objected both in writing and orally to the "unit of time analysis that was in the joint jury interrogatory." The court sustained the objection, saying, "I am not going to give that section...."

22

The next day, just prior to closing argument, Fontenot's attorney asked the court to clarify whether its ruling precluded him from making the "unit of time" argument. The court responded that Fontenot could argue whatever he wanted to argue, but that the cautionary instruction on "unit of time" would not be included in the jury charge. ENSCO interjected that it was reversible error to allow the argument without the cautionary instruction. The court persisted in its position, denied the cautionary instruction and allowed the argument. Although ENSCO's objection and the court's ruling indicate that there was some confusion on this issue, we conclude ENSCO did not invite the error. ENSCO's position at trial was clearly that it wished to preclude the "unit of time" argument, but that if the argument was allowed, the cautionary instruction was necessary.

In short, the district court erred in denying ENSCO's request for a cautionary jury instruction on this issue. However, because our ruling on the quantification-of-employer-fault issue mandates reversal, we need not reach the question of whether the failure to give the instruction may have been harmless error.

## IV. CONCLUSION

For the foregoing reasons, we reverse the judgment for Fontenot and remand this action to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.